Anderson, J.,
delivered the opinion of the court.
The plaintiff in error recovered judgment in the circuit court of Alexandria, against Abijah Thomas for $4,700, with interest on $2,200, part thereof, from the 11th of May, 1868, and on $2,500, the residue thereof, from the 12th of May, 1868, at the rate of six per cent, per annum, *697 and $9.62 costs; upon which an execution of fi. fa. was issued on the 21st of November, 1868, and levied, as appears from the sheriff’s return, upon twenty-eight raw cotton, five bales batting, three bales cotton cloth, forty-four bolts cotton cloth, and 13,000 pounds of cotton in process of manufacture. The levy was made November 23d, 1868.
The defendants in error—Turnbull & Co.—claimed the property levied on, and were allowed to interplead in said suit, and by their plea put in issue the question whether it was the property of Abijah Thomas, and subject to the plaintiff’s execution or the property of Turnbull & Co.?
■ To sustain the issue on their part, the latter gave in evidence an article of agreement between them and Abijah Thomas, bearing date the 12th of May, 1868, and which was admitted to record on the 26th of May of the same year; prior to the date of the said execution. The said articles, after reciting that the said Thomas had by deed, dated October 17th, 1866, and duly recorded, conveyed certain property in trust to secure Turnbull & Co. the repayment of all sums of money then due to the said firm, or to become due, on account of advances already made, or to be made for the purchase of cotton for the Mount Vernon Cotton Factory, or otherwise, and also to secure the performance by the said Thomas of covenants on his part to be performed, specified in a certain agreement, referred to in said deed of trust, proceeds as follows:
Now this agreement witnesseth, that for and in consideration of the premises, and of the advances already made, and to be hereafter made, by the said firm of Turnbull & Co., for the purchase of cotton, or for other expenditures connected with the manufacture of cotton goods at the Mount Vernon Factory, the said Thomas doth hereby covenant and agree to deliver the said firm of Turnbull & Co. each and every *698 yard of cotton goods manufactured by him at the said „ factory.
And the said Turnbull & Co. on their part covenant ant] agree that they will, from time to time, advance such sums of money as may be required for the purchase of cotton to be manufactured in said factory, not exceedjng-, and that they will advance further sums as may be required to pay hands and necessary expenses incurred in running of the machinery in said factory, upon presentation of the pay-rolls and the bills for said expenses. And it is further agreed between the parties hereto, that the said Thomas shall sell no goods manufactured in the said factory unless upon receipt of a written authority from Turnbull & Co. to that effect, specifying the amounts of goods to be sold, the pricé and terms of sale, and approving the credit of the purchaser; and Turnbull & Co. shall receive five per cent, for commissions and guarantee, on the entire product of said factory, whether sold by them or by Thomas by their authority as aforesaid, and where sales are made by Turnbull & Co. themselves, they shall receive one per cent, to cover all charges except freight and drayage. And it is further agreed between the parties hereto, that this agreement, and all matters and things herein, shall have the same effect, and that Turnbull & Co. shall be entitled hereunder to the same security and advantage of the said deed of trust, as if these presents had been executed at the time of the execution of said deed of trust.
In witness whereof the parties hereunto set their hands and seals on the day above written.
A. Thomas, [Seal.]
Turnbull & Co. [Seal.]
[Revenue stamp, 5c.]
Test:
James H. Gilmore.

*699
Virginia:

Alexandria county court clerk’s office, May 26, 1868.
The foregoing agreement was received in the office, having a U. S. internal revenue stamp thereon, properly cancelled, to the amount of five cents, admitted to ’ .
Test:
J. Tacy, Clerk.
By the foregoing articles Turnbull & Co. seem to have assumed obligations to make additional advances to those which they had previously undertaken to make, to purchase cotton which Thomas was to manufacture at his factory—“ the Mount Vernon Cotton Factory ”—and to advance further sums as may be required, to pay hands and necessary expenses in running the machinery, in consideration whereof, the said Thomas covenanted and agreed to manufacture the said cotton into cloth, and to deliver to the saic^Turnbull & Co. each and every yard of cotton goods manufactured by him at the factory. The goods were to be sold by said firm, and after deducting a commission to be allowed them for sale and guaranty, and expenses, the balances of the proceeds were to be applied to repayment of the advances they made pursuant to this agreement, and to their account for previous advances, for which it was an additional security to the deed of trust.
It is further stipulated that said Thomas shall sell no goods manufactured in said factory unless special authority is given to him in writing by Turnbull & Cov specifying the amount of goods to be sold, the price and terms of sale, and approving the credit of the purchaser, which would be in effect a sale made by Turnbull & Co. themselves. Any sale made by Thomas, consequently, would not be made by authority of the deed, but by virtue of the special authority1, given in writing, which Turnbull & Co- *700 are ^nves*-e(^ with a discretion to give or not to give, and consequently there is nothing in tin's stipulation which inconsistent with or repugnant to the deed. The. said Turnbull & Co. are to receive 5 per cent, commission and guaranty on the entire product of said factory, .whether sold by them or by Thomas by their authority as aforesaid, &e. The last clause seems to have been designed to show that this agreement was intended to secure the further advances then agreed to be made and as further security for what was due upon those which had been previously made and secured by the deed of trust, just as if it had been made at the same time the deed of trust was given, and had been made a part of it, and thus to exclude the idea that it wás merely intended as a substitute for the deed of trust.
The execution was levied upon raw cotton and cotton in, the process of manufacture, which had been purchased and delivered at the factory under the articles of agreement as-aforesaid, as well as upon the cotton cloth which had been manufactured out of the raw material. Whilst Thomas* under the articles of agreement, covenants to deliver to Turnbull & .Co. only the cotton cloth produced from the raw material, and does not covenant to deliver or to return to them the raw material, because it was purchased and delivered to him to be manufactured into cotton cloth for them, or to be delivered to them and sold, and the net proceeds thereof to be applied to the payment of what he owed them; yet, under the covenants of this deed, he had no more right or authority to divert the raw material from the uses and purposes for which it was purchased and conveyed to his factory than he had to divert the manufactured product thereof from such purpose; and consequently he held both alike subject to the covenants of the articles of agreement, and charged with the payment of the debt he owed Turnbull & Co. He had no more right to use the raw material, under the agreement, for any other pur *701 pose than that for which it was purchased with the money of Turnbull & Co., and delivered at his factory, than he would to have used any other cotton belonging to & Co., and which they had deposited with him as a bailee . . . to manufacture into cotton cloth for them. In fact, it is in proof that the cotton was purchased by Turnbull & Co., and invoiced to them, and paid for by them, and delivered at the “Mount Vernon Factory,” for the purpose of being manufactured for them. Indeed, if the purchases of the cotton had been made by Thomas in person, he should be taken to have made them, under this agreement, as agent for Turnbull & Co.
But this is an assignment or a covenant to deliver to the assignee, for valuable consideration received, after acquired personal property. Is such an assignment valid, and can it be enforced against the lien of a subsequent execution ?
At law it would not be a valid assignment. An assignment of a thing which- has no existence, actual or potential, at the time of the execution of the deed is void at law. Holroyd. v. Marshall, 10 H. of Lords cases, pp. 191, 215; Robinson v. Macdonnell, 5 Maule & S. 228. In Brockenbrough’s ex’x v. Brockenbrough & others, recently decided by this court, 31 Gratt. 580, several decisions are cited by J udge Burks in support of the doctrine as now stated, •and qualifications of the rule explained, to w;hich I beg to refer.
In the same case, upon the general doctrine in equity as ■to liens or charges upon after acquired property; he quotes as follows from Mr. Justice Story. In Mitchell v. Winslow, 2 Story, 630, after an examination of the authorities, Mr-Justice Story says, “ It seems to me a clear result of all the authorities, that whenever the parties by their contract intend to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then in esse or not, it attaches in equity, as a lien or charge *702 uPon t^le particular • property as soon as the assignor or contractor acquires a title thereto against the latter and all -persons asserting a claim thereto under him, either voluntardy or with notice, or in bankruptcy. Judge Burks . ,r , , , . also cites numerous other eases which tend to establish the doctrine of an equitable lien or charge upon after acquired property, but does not decide the question, not deeming it essential to the decision of that case.
In the leading case of Holroyd v. Marshall, decided by the house of lords in 1862, 10 H. of L. Reports, p. 191, it was held that in equity it is not necessary for the alienation of existing property that there should be a formal deed of conveyance. A contract to transfer the property given for valuable consideration, provided it is capable of being the subject of a decree for specific performance, passes it at once, and the vendor becomes a trustee for the vendee; which rule applies to personal property as well as to real estate. And that such a contract, if made with respect to the sale or mortgage of future acquired property, being capable of specific performance, transfers the beneficial interest in the property, as soon as it is acquired, to the vendee or mortgagee, who may have an injunction to restrain its removal.
I give the following synopsis of that case, as it strikingly resembles the case under judgment, so far as it affects the question involved: James Taylor was the owner of certain machinery in a mill which was purchased by the Holroyds. Taylor executed a deed (which was duly registered), by which it was declared that the machinery was the property of Holroyds. Taylor desired to repurchase it for £5,000> but had not the money to pay for it; whereupon it was conveyed to B in trust, when Taylor should pay the money, to transfer it to him, and if he did not pay the money, to hold it absolutely for Holroyds. The deed contained a covenant by Taylor to insure the machinery, and another covenant that all the machinery which, during the contin *703 uance of the deed, should, be placed in the mill in addition ’ y to, or substitution for, the original machinery, should be subject to the same trusts. Taylor sold some of the nal machinery, purchased new machinery, and sent to Hoiroyds accounts of these sales and purchases, but nothing was done by or on behalf of Holroyds to take possession of the newly acquired machinery. On the 2d of April; 1860, Holroyds served Taylor with notice of a demand for payment of the ¿£5,000. An execution against Taylor was afterwards put in by a creditor. The only part of the machinery claimed by the execution creditor consisted of those things which had been purchased by Taylor since the date of the deed of trust. It was held, reversing the decree below, that though there had been no novus actus interveníais, the title of Holroyds was preferable to that of the execution creditor, as to the new as well as the old machinery.
Lord Chelmsford, who delivered a very clear and able opinion, which was the prevailing opinion in the case, said “ at law property not existing, but to be acquired at a future time, is not assignable; in equity it is so.” And again, “ in equity it is not disputed, that the moment the property comes into existence, the agreement operates upon it.” We think such a right may be asserted under the pleadings in this case.
That case and this are analagous in this, that both are covenants to transfer after acquired property, and to charge it with the payment of covenantor’s debts to covenantee. In the former case the covenant is contained in the deed of trust, which conveys existing property; in the latter it is contained in a subsequent deed, which is prior to the execution, and refers to the deed of trust previously given on existing property, and- recognizes and confirms the same. Neither is an actual conveyance of the after acquired property. Both are covenants by deed that it shall be charged with the payment of the debts due the covenantees; in the *704 one case that it shall beheld for that purpose; m the other . , that the cotton purchased by the covenantees, or purchased them with their money, and delivered at the covenant- or>s factory, shall be manufactured into cotton cloth for them, every yard of which, when made into cloth, shall be delivered to them, to be sold by them, and proceeds applied to the payment of their debt. It is a trust, in the case yinder judgment, solemnly undertaken by Thomas, to purchase for Turnbull & Co., with their money, raw cotton, and to manufacture it into cloth—they paying the hands and the expense of running the machinery—every yard of which is. to be delivered to them to be sold by them, and the proceeds, after paying their commission for selling and guaranty, &c., to be applied to the payment of their debt. No rule of law was infringed by this agreement, nor were the rights of third persons prejudiced by it. The law permits such grants to take effect upon the property, when it is brought into existence, in fulfilment of an express agreement, if founded on a good consideration, and it appears that no rule of law is infringed, and the rights of third persons are not prejudiced. Beall v. White, 94 U. S. Rep., (4 Otto,) p. 382, 387, citing Story Eq. Jur., (9th ed.), § 1040; Dunham v. Railway Co., 1 Wall. U. S. R. 254; U. States v. New Orleans Railroad, 12 Id. 362. Equities created by such agreements are in the nature of a trust, attaching to and binding the property at the instant of its coming into existence. In this casé, it creates a lien upon the property, which attaches to it prior to the lien of the execution, and which will be enforced by a court of equity. As between the parties, Turnbull & Co. had a lien upon the raw material and the cotton cloth, which was the product thereof, which was a%railable against the judgment or execution creditor, with or without notice; inasmuch as, according to well established principles, a judgment creditor must take the property, subject to every liability under which the debtor held it. Holroyd v. Marshall, supra, p. *705 226; Borst v. Nalle, 28 Gratt. 423, and the numerous . ' . . eases cited by J. Buries in support of the position.
In that case Lord Qhelmsford, after reviewing authorities, comes to the following; conclusion: “What■ever doubts, therefore, (he says,) may have been formerly entertained upon the subject, the right of priority of an ■equitable mortgagee over a judgment creditor, though without notice, may now be considered to be firmly established; and according to the opinion of Lord St. Leonards, *any agreement binding property for valuable consideration’ will confer a similar right.”
In this case the articles of agreement were duly admitted to record, which was constructive notice to creditors and purchasers, unless contracts in respect to after acquired property are not embraced in the recording acts. The language of our recording act is very broad and comprehensive. Code of 1873, ch. 114, §4. It is: “Any contract in writing, made in respect to real estate or goods and ■chattels, * * * shall, from the time it is duly admitted to record, be, as against creditors and purchasers, as valid as if the contract was a deed conveying the estate or interest embraced in the contract.” There are no words, either expressly or by implication, excluding contracts in respect to after acquired property. And as to notice, the register would furnish the same information of the dealing with future as with existing property. Without now construing the statute with regard to all contracts in respect to after acquired property, we are of opinion the articles of agreement in this case was such an instrumentas the statute authorizes to be recorded, and that it was duly recorded; which must be regarded as constructive notice to creditors and subsequent purchasers.
In the light of what has been said, we think there was no error in the' refusal of the court to give the first instruction asked for by the defendants—the plaintiffs in error. Though it may enunciate abstract principles of law cor *706 recl^’ the view which we have taken of the case, they were wholly irrelevant and inapplicable to the ease. And to the instruction given by the court in its stead, it was strict]y applicable to the case, as we have viewed it, but could nor have prejudiced the defendant. Iso exGeption was taken to the second, third and fourth instructions given by the court, which are the same that were asked to be given by the defendant.
We are further of opinion that the verdict of the jury was right, and that the court did not err in overruling the defendant’s motion for a new trial. The court is of opinion, therefore, to affirm the judgment of the circuit court, with costs.
Judgment affirmed.