# 𝔖taunton

G. H. Dickenson, Receiver, Etc. v. I. C. Boyd, et al.

September 11, 1936.

Present, Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Raymond J. Boyd* and *A. T. Griffith*, for the appellants.

*A. S. Higginbotham, L. E. Fuller* and *Greever & Gillespie*, for the appellees.

Browning, J., delivered the opinion of the court.

In September, 1929, I. C. Boyd, Incorporated, was formed and chartered. Its financial scheme was presented to and approved by the State Corporation Commission of Virginia. The incorporators were I. C. Boyd, A. R. Brown and P. D. Slate. Prior to this incorporation I. C. Boyd had conducted and operated a large mercantile business in the county of Russell in Virginia. He owned two general stores, one at Drill and the other at Honaker. A. R. Brown, P. D. Slate and F. K. Whitehead were employees of I. C. Boyd in the conduct of these stores. In addition to the two stores, buildings and the stocks of merchandise, I. C. Boyd owned thirteen pieces or parcels of land in the vicinity of his places of business. The father of I. C. Boyd was E. K. Boyd, who was a man of large means at the time of his death. He had a number of suns some of whom, besides I. C. Boyd, were E. R. Boyd, B. M. Boyd and R. R. Boyd. The father moved to the state of Maryland in the year 1918, as did others of his family, and I. C. Boyd followed them in the early part of 1929. All of the Boyd brothers were active, and for a time, successful business men. The untoward economical conditions which began to prevail throughout the country about 1928 proved disastrous to them, and they lost heavily through shrinkage of values and other ill effects of the general depression.

It is in evidence that at the time of the incorporation of I. C. Boyd, Inc., both I. C. Boyd and his brother, E. R. Boyd, were indebted by primary and secondary obligations in an amount in excess of a fair cash value of their property and holdings.

On the 27th of September, 1929, I. C. Boyd and wife conveyed to the I. C. Boyd Corporation the thirteen parcels of land referred to, and subsequently another parcel, for the consideration of $13,400. The value of the entire assets of the corporation as taken by it from I. C. Boyd and wife was fixed at $49,000, which was alleged to be its full fair worth. The consideration flowing to Boyd was the assumption, by the corporation, of the payment of $25,000 of his

primary indebtedness and the issuance to him or his assignees of 240 shares, the original issue of its capital stock.

Of this stock, 50 shares were issued to Gertrude Boyd, wife of I. C. Boyd, in consideration of her marital rights in his real estate, as well as her own money which went into the purchase of the properties acquired by him. Fifty shares were sold to B. M. Boyd to be credited on I. C. Boyd's note of $15,000 to him, representing borrowed money from him. Fifty shares were purchased by E. R. Boyd and five shares each were issued to A. R. Brown, P. D. Slate and F. K. Whitehead, who were retained as employees in the two stores by the corporation. Two of the I. C. Boyd debts assumed by the corporation as a part of the $25,000 were two notes of $1,000 and $2,500, respectively, which were due to and held by the appellant bank. Between the date of the incorporation in 1929, and the institution of the suit in judgment, eleven payments were made by the corporation on these notes, which discharged this indebtedness to the bank down to a sum of less than $600.

I. C. Boyd was and continued to be in active control and management of the business of the corporation, as its president, at a salary of $200 per month for about two years and thereafter he received no compensation for his services. He came monthly from his home in Maryland to the stores, staying frequently two weeks at a time in the interest of the corporation.

After I. C. Boyd, Inc., became possessed of the properties and mercantile business, the services of I. C. Boyd and the former employees in the stores, were deemed necessary for the successful conduct of the business to the end that the corporation might perform its purposes and particularly the payment of the $25,000 of the primary debts of I. C. Boyd which it assumed. The corporation paid off a large portion of the debts which it assumed.

In April, 1932, the store building at Drill and other buildings on the real estate there belonging to the corporation were destroyed by fire.

There was collected by the corporation on account of this fire some $8,700 of insurance. A portion of this money, it is alleged, was used by I. C. Boyd as a payment upon his personal indebtedness and the residue, $6,927.08, was represented by a cashier's check issued by the appellant bank, at the instance of I. C. Boyd, payable to B. M. Boyd, to be credited on I. C. Boyd's indebtedness to him, which indebtedness was included in the amount which the corporation assumed.

B. M. Boyd undertook to collect, in due course, the cashier's check but payment was refused by the appellant bank which sought to subject, by this suit, the fund in its control on account of the insurance to the payment of a note which it held and upon which I. C. Boyd was endorser.

The bill charged that the incorporation of I. C. Boyd, Inc., was a fraudulent scheme to hinder, delay and defraud the creditors of I. C. Boyd; that the deeds of conveyance to the corporation by Boyd and wife and the assignments to it by Boyd, and the assignment of the large part of the insurance money, represented by the cashier's check, to B. M. Boyd, were without consideration and fraudulent and asked that appropriate relief be granted the plaintiff, the appellant bank, by setting aside the various alienations, as fraudulent, and treating the corporation as fraudulently conceived and cre-ated, etc.

The trial court entered a decree refusing to grant the relief prayed for as above indicated and held that the sum of money represented by the cashier's check was and is the property of B. M. Boyd and should be turned over to his estate, etc.

We think that the determination of one question will dispose of the case, and that is, What is the legal effect of the dealings of the appellant bank with the corporation over the period of its existence?

The appellant, the bank, was fully aware of the incorporation of I. C. Boyd, Inc. Its purposes and plans were fully set forth in its charter. Its scheme was reflected by its minutes. Its every step was known to or was readily ascertainable by the bank. It benefited by and participated in the results of the operation of the corporation. For four years

and more it accepted renewals of negotiable paper and payments from the corporation, on indebtedness due to it by the corporation, which payments were in excess of $3,000.

This course of conduct constituted ratification, we think, and the appellant is now estopped to question the validity of the legal existence of the corporation and the legality of the transactions referred to. One cannot take under a conveyance or assignment and then claim against it. In the language of the Scotch law, one may not "approbate and reprobate" at the same time in the same case as to the same matter.

See Herman on Estoppel, section 735; *Hurley* v. *Bennett*, 163 Va. 241, 176 S. E. 171; *Chesapeake, etc., R. Co.* v. *Walker*, 100 Va. 69, 40 S. E. 633, 914.

It follows that for the reasons we have assigned we affirm the decree of the trial court.

*Affirmed.*