## Richmond

BERNARD LEVIN AND CARLA DECRENY LEVIN

v.

VIRGINIA NATIONAL BANK, MARTIN L. ROSEN
AND FIRST REALTY MORTGAGE CORPORATION

April 18, 1980.

Record No. 780814.

Present: All the Justices.

*Robert C. Nusbaum (Hofheimer, Nusbaum & McPhaul,* on briefs), for appellants.

*Charles W. Best, Jr. (Kaufman and Oberndorfer,* on brief), for appellee.

No brief or argument for Martin L. Rosen and First Realty Mortgage Corporation, appellees.

THOMPSON, J., delivered the opinion of the Court.

This appeal grows out of a motion for a declaratory judgment filed by Bernard Levin and Carla DeCreny Levin, plaintiffs in the court below, on September 17, 1976. The motion for judgment embraced two causes of action, the first alleging that the plaintiffs, on June 19, 1972, executed a $50,000 deed of trust note payable to bearer representing loans then and thereafter made by Fidelity Commercial Company (FCC). The deed of trust note was secured by a second lien deed of trust on real estate of the plaintiffs. Plaintiffs further alleged that FCC agreed to release the deed of trust and note, but instead, negotiated the same to Virginia National Bank (VNB). In the second cause of action, plaintiffs allege that they also executed a collateral note dated June 19, 1972, in the same amount of $50,000 to be paid solely from other collateral held by FCC. The motion asked the court to determine whether any money was owed to VNB on the deed of trust note, what liens existed on the real estate of the plaintiffs, and what amount the plaintiffs owed on the collateral note.

After voluminous evidence had been presented, the lower court, sitting without a jury, concluded that (1) the bearer deed of trust note dated June 19, 1972, was a negotiable instrument; (2) VNB was a holder in due course of that note; (3) the plaintiffs had not established a defense to the note; (4) VNB was owed the sum of $46,491.30, with interest at 8% from April 17, 1975, plus costs in

the amount of $2,156.20, and attorney's fees of $6,973.70; and (5) VNB had a first and prior lien on proceeds being held in escrow from the sale of real estate pursuant to an agreement of June 14, 1976.

Plaintiffs assigned errors to the trial court's conclusions that the bearer deed of trust note was a negotiable instrument, that VNB was the holder in due course, that the plaintiffs had not established a defense to the note, and that VNB was entitled to the sums previously indicated with the lien thereon.

Although there was much discussion in the evidence about the so-called collateral note dated June 19, 1972, the lower court did not pass upon that and no error was assigned concerning that note. Thus, we do not believe liability on that note is properly before this court.

While we are cognizant of all the facts determined by the court below, we record here only those findings which are relevant and material to the issues presented. On August 1, 1968, Bernard and Carla Levin, as husband and wife, borrowed $20,000 from FCC in order to invest in a limited partnership known as Executive Investors. Executive suffered major losses in the early 1970's, and, as a result, in January of 1972, the partners of Executive were requested to supply additional contributions in an effort to revive the business. The Levins invested an additional $10,000 in the organization. They obtained $5,000 from FCC on a promissory note signed by the Levins. The source of the other $5,000 is not relevant here. In order to secure these two FCC loans for $20,000 and $5,000, respectively, in June, 1972, the Levins were required to sign a "collateral" note for $50,000. The note was payable to FCC and was dated June 19, 1972.

A second note was executed by the Levins on or about the same time as the first note. This second note, secured by a deed of trust on the Levins' residence, was made payable to bearer and was held by FCC. Ralph Cohen, president of FCC, was a close friend of Bernard Levin and the moving force behind Executive Investors. This deed of trust note is easily confused with the "collateral" note discussed above in that both notes were dated June 19, 1972, and bore a face amount of $50,000. The Levins received $50,000 in exchange for this deed of trust note. (The money was purportedly used by Bernard Levin to consolidate other outstanding debts. None of the funds recited in the deed of trust note were ever paid to Executive Investors.)

On September 15, 1972, VNB advanced $40,000 to FCC and

received in return both the deed of trust note and the collateral note. There was some dispute as to whether the collateral note should have been transferred to VNB, but we are not concerned with that matter here. We only deal with the effect of the transfer of the deed of trust note to VNB. Similarly, a myriad of other loans and dealings occurred during the time surrounding the execution of these two notes, but likewise they are not relevant.

On or about March 3, 1976, VNB notified the Levins it presently held the deed of trust note and that it was demanding payment on it. On or about May 24, 1976, the Levins sold their residence. On June 14, 1976, the Levins and VNB entered into an agreement whereby the net proceeds from the sale of the Levins' residence in the amount of $48,614.95 would be placed in escrow pending a determination of the rights of the parties.

We now turn to the issues presented by these facts.

## I. NEGOTIABILITY OF DEED OF TRUST NOTE DATED JUNE 19, 1972.

So far as relevant here, the note provides that:

FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay to BEARER, or order, negotiable and payable without offset, Fifty Thousand Dollars, with interest on all unpaid principal at the rate of 8 per centum per annum from the date hereof until payment.

This note is for all past and future advances up to its principal sum of $50,000 for investments in Executive Investors for a limited partnership interest therein by the makers hereof.

Since the note was signed by the Levins, the first paragraph quoted above obviously qualifies the note as a negotiable instrument. *See* Code §§ 8.3-104(1) and 8.3-108.

The Levins contend that the second paragraph of the note has the effect of destroying its negotiability. But this argument is completely refuted by Code § 8.3-105(1)(a)-(c).* *See also* Official Comment, Code § 8.3-105.

---

* "(1) A promise or order otherwise unconditional is not made conditional by the fact that the instrument (a) is subject to implied or constructive condition; or (b) states its consideration, whether performed or promised, or the transaction which gave rise to the instrument, or that the promise or order is made or the instrument matures in accordance with or 'as per' such transaction; or (c) refers to or states that it arises out of a separate agreement or refers to a separate agreement for rights as to prepayment or acceleration; . . . ."

The testimony indicates that this note was prepared by Bernard Levin. If he had wished to have the instrument qualified or limited by some other writing, then he certainly had the option to choose more appropriate language to effectuate his intent. We hold this note negotiable.

## II. VNB WAS A HOLDER IN DUE COURSE.

■ Code § 8.3-302(1) states that:

A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

The conclusions of the trial court were abundantly buttressed by the evidence. There is no question but that VNB gave value for the instrument. Further, there is no evidence that when VNB acquired the instrument in September of 1972, it had any notice of any outstanding defense or claim to cast doubt upon the good faith of the transaction, or that the transaction was anything other than a normal commercial transfer.

## III. DID THE OBLIGORS ESTABLISH A DEFENSE?

■ We preface a discussion of this topic with the observation that since the lower court was correct in deciding that VNB was a holder in due course, it is unnecessary that we consider alleged defenses. Code § 8.3-305 provides in pertinent part:

To the extent that a holder is a holder in due course he takes the instrument free from
(1) all claims to it on the part of any person; and
(2) *all defenses of any party to the instrument with whom the holder has not dealt.* . . . (Emphasis added.)

■ The further argument is made that even if the Levins are liable on the deed of trust note, the extent of their liability should be reduced to $17,253.35 because the note of FCC to VNB had been reduced to that amount.

However, it should be borne in mind that the original security agreement dated August 23, 1968, provided in part:

> Debtor [FCC] hereby transfers and assigns to, and grants to Secured Party [VNB] a security interest in Debtor's notes receivable (herein sometimes called notes) as indicated below, and in all proceeds of any and all such notes, to secure any and all Obligations as hereinabove mentioned.
>
> All notes receivable of Debtor, now existing or hereafter acquired, which have been or may hereafter be delivered to or come into the possession of Secured Party, together with all security therefor.

The Levin note was used by FCC as collateral for its ongoing obligations to VNB as the security agreement provided. We see no legal objection to this and reject the argument. *Didier* v. *Patterson,* 93 Va. 534, 536-37, 25 S.E. 661, 662-63 (1896); *First National Bank* v. *Turnbull and Co.,* 73 Va. 695, 701-06 (1880); Code § 8.9-204(3)-(5).

Despite the plethora of testimony, the issue in its final analysis resolved itself into one of credibility which the trial court has settled by its decree.

*Affirmed.*