# THE MCLEAN BANK

V.

## DONALD E. NELSON, ADMINISTRATOR C.T.A. D.B.N. OF THE ESTATE OF COLEMAN C. GORE, ET AL.

Record No. 830888

November 26, 1986

Present: All the Justices

*Stephen C. Price (Perkins, Price & Zimmerman,* on briefs), for appellant.

*James H. Chamblin; Alexander H. Slaughter (Robert E. Stroud; Gregory B. Nevers; Powell L. Duggan; Nalls, Chamblin & Chapman; McGuire, Woods & Battle; Martin & Walker, P.C.,* on briefs), for appellees, Walter A. Radius and Howard P. Walker.

No brief or argument for appellee, Donald E. Nelson, Administrator, etc.

THOMAS, J., delivered the opinion of the Court.

This appeal involves a suit on what purported to be a corporate note. The corporation, Isle of Eden, Incorporated (Isle of Eden), had been automatically dissolved, pursuant to statute, before the note was executed. The business entity was not reinstated as a corporation until after the note was executed. McLean Bank (Bank), the holder of the note, attempted to impose personal liability upon the stockholders, officers, and directors of Isle of Eden.

The trial court disposed of the case on demurrer, concluding that the Bank failed "to allege facts that would impose personal liability upon the corporate officers even though they might have executed a corporate obligation between dissolution for failure to file annual reports and reinstatement." We disagree with the trial court. Therefore, we will reverse its judgment.

Isle of Eden lost its corporate status on June 1, 1973, for failure to file its annual reports. The note in question was executed on June 20, 1974, during the period of dissolution. The note was in the amount of $63,359.33 payable to the order of L. Blaine Liljenquist. The note provided that it was "due and payable two (2) years from the date hereof." It contained the following recital: "IN WITNESS WHEREOF, ISLE OF EDEN, INCORPORATED, has caused this Note to be signed by its President and its corporate seal to be hereto affixed, duly attested by its Secretary." It was signed by William D. McKinney as "president" of "Isle of Eden, Incorporated." In the place marked "ATTEST," Howard P. Walker signed the note as "Secretary." Below the signatures of McKinney and Walker, the following language appeared: "This Note is hereby accepted this *20* day of *June*, 1974, pursuant to Paragraph 4 of the Contract of Settlement dated the

10th day of June, 1974, as to terms and amount." L. Blaine Liljenquist signed this acceptance.*

In March or April 1975, Liljenquist indorsed and transferred the note to McLean Bank. At the very bottom of the note in the handwriting of Liljenquist is the language "Pay to the order of The McLean Bank," followed by Liljenquist's signature. Prior to the date the note was transferred to the Bank, Isle of Eden had been reinstated as a corporation.

On December 2, 1980, the Bank filed suit on the note. The defendants were Howard P. Walker, Walter A. Radius, and the administrator of the estate of Coleman C. Gore. The Bank contended that Gore, Walker, and Radius "at all times pertinent to this suit, purported to be stockholders and either officers or directors, or both, of Isle of Eden, Incorporated." The Bank alleged further, among other theories of liability, that "[n]otwithstanding the dissolution of Isle of Eden, Incorporated, on June 1, 1973, Coleman C. Gore, Walter A. Radius, and Howard P. Walker, and also William D. McKinney continued to transact business as individuals under the trade style of Isle of Eden, Incorporated." The Bank further alleged that McKinney signed the note as agent for the other individual defendants. The Bank also alleged the personal liability of the defendants: "Plaintiff is advised that by virtue of the dissolution of Isle of Eden, Incorporated at the time the subject note was executed that the defendants are jointly and severally liable for the said indebtedness incurred in the name of Isle of Eden, Incorporated."

All the defendants demurred to the motion for judgment. The trial court sustained the demurrers. The trial court was of opinion that with regard to Gore and Radius there was "no allegation that they continued to operate the corporate business." Further, the court was of the view that each demurrer "should be sustained upon the ground that there are no factual allegations in the Motion for Judgment that would support the legal conclusion of the agency pleaded." The trial court gave the Bank leave to file an amended pleading.

---

* The written acceptance that was signed by Liljenquist differs from "acceptance" as that term is used in the Uniform Commercial Code (U.C.C.) in Code § 8.2-606 which concerns acceptance of goods and as it is used in Code § 8.3-410 which concerns an engagement to honor a draft as presented. An acceptance of a note is a concept not found in the U.C.C.

The Bank filed its amended motion for judgment on February 16, 1982. Again, the defendants filed demurrers. Again, the demurrers were sustained. Again, the trial court stated that the facts alleged were insufficient to impose personal liability upon the defendants. The trial court concluded further that the Bank was not a holder in due course because it appears from the face of the note that "a separate document must be referred to in order to ascertain 'terms and amount.' " Because it held that the Bank was not a holder in due course, the trial court ruled that the Bank was subject to the defense that Liljenquist dealt only with the corporation, did not rely upon any officer or director individually, and could not, therefore, assert individual liability. The trial court also rejected a partnership theory that was advanced by the Bank to impose personal liability upon the individual defendants.

On appeal, the Bank challenges each of the rulings made by the trial court alleging, in essence, that it pled sufficient facts upon which personal liability could be imposed upon the defendants. Walker makes two assignments of cross-error. He contends the trial court should have ruled that he could not be personally liable on a note which he signed only in a representative capacity to attest the signature of the President of Isle of Eden. Walker submits further that the trial court should have ruled that the suit was barred by the applicable statute of limitations.

The threshold issue is whether, under Virginia corporate law, persons who act on behalf of a dissolved corporation can be held personally liable for their acts. To resolve this issue, we must consider several statutory provisions as they existed at the time of the events here under review. In 1974, Code § 13.1-52 set forth the effect of the issuance of a certificate of incorporation; it provided as follows:

> Upon the issuance of the certificate of incorporation, *the corporate existence shall begin.* The certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this Act.

(Emphasis added.) In 1974, automatic dissolution was controlled by Code § 13.1-91; it read in pertinent part as follows:

If any domestic corporation shall fail on two successive annual dates to file the annual report required by this Act . . ., such corporation shall be thereupon automatically dissolved as of the first day of June and its properties and affairs *shall pass automatically to its directors as trustees in dissolution.*

Also pertinent is former Code § 13.1-92 which governed reinstatement of dissolved corporations; that provision read in relevant part as follows:

Upon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of dissolution except that *reinstatement shall have no effect on any question of personal liability of the directors, officers, or agents in respect of the period between dissolution and reinstatement.*

(Emphasis added.) Finally, it is significant for purposes of our analysis that former Code § 13.1-296 made it a misdemeanor for individuals to conduct business as a corporation without being so authorized.

The appellees argue that they cannot be personally liable under the foregoing statutory scheme because nowhere do the relevant statutory provisions expressly impose liability for conducting the affairs of a dissolved corporation. To illustrate their point, appellees refer to former Code § 13.1-119 which concerned foreign corporations and which provided in part as follows:

If a foreign corporation transacts business in this State without a certificate of authority, *its directors, officers, and agents doing such business shall be jointly and severally liable for any contracts made or to be performed in this State* and any torts committed in this State between the time when it began to transact business in this State and the date when it obtains a certificate of authority.

(Emphasis added.) The appellees argue, based on the foregoing provision, that had the General Assembly intended to impose personal liability upon individuals who act on behalf of a dissolved corporation it would have said so.

Moreover, the appellees contend that the "continued existence" language of former Code § 13.1-92 shields them from liability.

They submit that since corporate status had been reinstated at the time Liljenquist transferred the note to the Bank, then the note was a corporate obligation and they have no individual responsibility for it.

Finally, the appellees submit that in states where personal liability has been imposed for acts done while the corporation was out of existence, invariably there was a statute imposing such liability. They reiterate that no parallel provision exists in Virginia with regard to domestic corporations. They argue that the criminal penalties provided in former Code § 13.1-296 either provide no basis for a private right of action or require proof of intent, an element of proof not alleged by the Bank.

The appellees argue that it would be a harsh rule if personal liability were automatically imposed on the officers, directors, and agents of a dissolved corporation without regard to the reason the corporation was dissolved. The appellees' arguments have some surface appeal; however, their arguments overlook important considerations of the nature of corporations and of statutory interpretation.

There was no need for the General Assembly to state expressly that where individuals act on behalf of a dissolved corporation they may be personally liable for their acts. It is the corporate form that provides limited liability. Without the corporation, or some other business organization not pertinent in this appeal, personal liability exists. The limited liability provided by a de jure corporation is the exception, not the rule. As the Bank argues, if a group of individuals have not done the things necessary to secure or retain de jure corporate status, then they will not have corporate protection. They will be exposed to personal liability. Former Code § 13.1-52 stated in part that "the corporate existence shall begin" upon the issuance of the certificate of incorporation. Surely, corporate existence must end upon dissolution.

Nor are we persuaded by the appellees' reference to language in former Code § 13.1-119 which expressly imposed personal liability for acts in Virginia on behalf of an undomesticated foreign corporation. The appellees' argument on this point overlooks a critical distinction between a dissolved domestic corporation and a foreign corporation. A dissolved domestic corporation is no corporation at all. A foreign corporation is still a corporation even though it might not be domesticated. If an entity is no corporation at all, the individuals who conduct its affairs must be per-

sonally liable for their acts and, as noted above, no need exists to recite the obvious in a statute. On the other hand, if liability were not expressly imposed upon those acting on behalf of a foreign corporation, those individuals might escape liability by reliance on the corporate form. Thus, in the case of a dissolved domestic corporation, the legislature had no need expressly to impose individual liability on those who conduct its affairs. However, in the case of an undomesticated foreign corporation, that precise need does exist.

■ The appellees' argument fails to account for the language in former Code § 13.1-92 that "reinstatement shall have no effect on any question of personal liability of the directors, officers or agents in respect of the period between dissolution and reinstatement." All they contend is that this language does not impose liability but simply leaves liability unaffected. This argument begs the central question of what personal liability is being left unaffected. The only personal liability that could be left unaffected is personal liability that came into being during the period of dissolution. The only personal liability to which the statute could refer is personal liability for doing business as if the entity were a de jure corporation. In our opinion, the language in former Code § 13.1-92 is an acknowledgement that personal liability attaches, by operation of general principles of law, to individuals who act on behalf of a dissolved corporation. Otherwise, the language is superfluous and meaningless. Under well-established principles of statutory interpretation, where possible, every word of a statute must be given meaning. *See Gallagher* v. *Commonwealth*, 205 Va. 666, 139 S.E.2d 37 (1964). Here, the proper way to read former Code § 13.1-92 is that it did not relieve directors, officers, or agents of personal liability that otherwise arose during the period of dissolution.

■ The appellees' "continued existence" argument is also without merit. They contend that since the corporation had been reinstated when Liljenquist transferred the note to the Bank, they are relieved of personal liability for the note. The central fallacy in this argument is that though the "continued existence" language may have operated to make the note a corporate note, the balance of former Code § 13.1-92 is explicit in stating that personal liability is not extinguished. Thus, we need not and do not decide whether the transfer of the note during a time when Isle of Eden was reinstated as a corporation makes the note a corporate obliga-

tion because it is clear that, even if the note also became a corporate obligation, those who acted on behalf of the dissolved corporation would remain personally liable thereon. If the situation were otherwise, former Code § 13.1-92 would have operated to relieve individual officers, directors, and agents of liability for making contracts during the period of dissolution when the statute expressly stated that it was not meant to operate in that fashion. It is inconceivable that a statute could operate in such a way as to permit the very thing it expressly forbids.

■ We are not convinced by appellees' reference to cases from other states which have a statutory scheme different from that existing in Virginia. Because other jurisdictions have express statutory language imposing personal liability for acts done on behalf of a non de jure "corporation" does not mean that, absent such a statute, we cannot or should not permit the imposition of personal liability in a proper case. Indeed, the criminal provision in our statutory scheme is a clear manifestation of the Commonwealth's disapproval of continuing the normal business affairs of a dissolved corporation. We think it incongruous to suggest that conducting the affairs of a dissolved corporation can lead to criminal punishment but not personal liability. This is especially true because, without the imposition of personal liability, it would often be the case that nobody would be liable for a debt. The "corporation" would not be liable because it would not exist. The individual actors would not be liable because, by the appellees' argument, the statute did not say they were. Such a state of the law would be an invitation to unscrupulous conduct. Individuals could contract on behalf of a dissolved corporation knowing full well that, absent proof beyond a reasonable doubt of criminal intent, they could take goods or money from another and walk away "scot free." This is not the state of the law in the Commonwealth.

■ We hold that where a party alleges that the business affairs of a dissolved corporation have been carried on by the acts of certain officers, directors, or agents of the dissolved corporation, then those officers, directors, or agents can be held personally liable for contracts entered on behalf of the dissolved corporation. *See Moore* v. *Occupational Safety & Health Review Com'n.*, 591 F.2d 991 (4th Cir. 1979). We hold further that any such personal liability incurred because of acts done during the period of corporate dissolution is not relieved by the reinstatement of the corporation. *Id.*

■ We turn now to a consideration of whether the Bank was a holder in due course of the note. This is important because a holder in due course takes free of "all defenses of any party to the instrument with whom the holder has not dealt." Code § 8.3-305. Thus, if the Bank was a holder in due course, the defenses of corporation by estoppel and de facto corporation which have been raised by the appellees could not — even if they were viable in Virginia — be asserted against the Bank.

■ Here, the trial court declared that the Bank was *not* a holder in due course because of the trial court's view that the note was not negotiable. Before a holder can be a holder in due course, the note must be negotiable. *See* Code §§ 8.3-102(1)(e) and 8.3-302. The trial court concluded that the reference in the note to "terms and amount" destroyed its negotiability. The trial court wrote as follows on that point:

Had the payee, L. Blaine Liljenquist, accepted the note only "pursuant to Paragraph 4 of the Contract of Settlement . . .," the Court would agree with the Plaintiff that negotiability had not been affected, but the acceptance relating to "terms and amount," two essential ingredients of a promise to pay, might alter what must be an unconditional obligation.

The appellees contend, in support of the trial court's ruling, that the language concerning acceptance "made the promise to pay conditional" and that the notation "made it necessary to refer to the Contract of Settlement to determine all the terms of the Note." They contend that the notation is "more than a mere recital of the origin of the instrument on an informational reference." We disagree.

■ In our opinion, Liljenquist's notation on the note did not destroy negotiability. The requirements for negotiability are set forth in Code § 8.3-104(1), which provides that for a writing to be a negotiable instrument, essentially, it must have the following characteristics:

1.  be signed by the maker or drawer;
2.  contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer;
3.  be payable on demand or at a definite time; and

4.   be payable to order or to bearer.

This note was signed by William P. McKinney as president of Isle of Eden. It contains a promise to pay a sum certain of $63,359.33. It states that it is payable "two (2) years from the date hereof." Further, it is payable to the order of L. Blaine Liljenquist.

The language relied upon to destroy negotiability is language used by the payee in accepting the note. It is not language used by the maker concerning any promise made or condition imposed by the maker. We have found no cases in which the acceptance of a note has been found to destroy its negotiability. In our view, that possibility is inconsistent with the provisions of the Uniform Commercial Code (U.C.C.). Nowhere does the U.C.C. refer to "acceptance" with regard to a note. There is no need for a person who takes a note to state in writing that he accepts the note. Notes are either transferred or negotiated. *See* Code §§ 8.3-201 and 8.3-202. The only writing that is required to negotiate a note initially is the indorsement of the person to whom the note is payable. Thus, Liljenquist's written acceptance of a note which contained all the elements required for negotiability may well have been a legally ineffective act. However, we do not decide the negotiability issue on that basis.

Even if the acceptance had legal effect, it could not destroy negotiability. The language used by Liljenquist in his acceptance contrasts sharply with that used in *Salomonsky* v. *Kelly*, 232 Va. 261, 349 S.E.2d 358 (1986), where the maker signed a note which provided, in the body of the note, that it was "payable as set forth in that certain agreement dated March 15, 1976." In *Salomonsky*, we said the quoted language made the note nonnegotiable because one would have to look outside the note to determine its payment terms. Here, the situation is entirely different.

This case falls squarely within the sweep of Code § 8.3-105 and related comments which describe when a promise or order is unconditional. Code §§ 8.3-105(1)(b) and (c) state that:

A promise or order otherwise unconditional is not made conditional by the fact that the instrument . . . (b) states its consideration, whether performed or promised, or the transaction which gave rise to the instrument, or that the promise or order is made or the instrument matures in accordance

with or "as per" such transaction; or (c) refers to or states that it arises out of a separate agreement. . . .

Official comment 2 to Code § 8.3-105 explains that it "adopts the general commercial understanding that such language is intended as a mere recital of the origin of the instrument and a reference to the transaction for information, but is not meant to condition payment according to the terms of any other agreement." Significantly, the example in the official comment of a reference that will not destroy negotiability is quite similar to the language used by Liljenquist. It reads as follows: "This note is given for payment as per contract for the purchase of goods of even date, maturity being in conformity with the terms of such contract." Code § 8.3-105, comment 2.

Official comment 3 to Code § 8.3-105 states that reference to a separate agreement is not intended to affect payment unless it says so expressly:

Such a reference normally is inserted for the purpose of making a record or giving information to anyone who may be interested, and in *the absence of any express statement to that effect is not intended to limit the terms of payment.*

(Emphasis added.) The notation relied on here to destroy negotiability contains no express statement that it affects payment terms.

■ We hold that the trial court erred in concluding that the note in question was nonnegotiable. *Cf. Salomonsky* v. *Kelly.* Further, since the nonnegotiability of the note was the only basis upon which the trial court concluded that the Bank was not a holder in due course, we hold that the trial court erred in concluding that the Bank was not a holder in due course. *See Levin* v. *Virginia Nat. Bank*, 220 Va. 1087, 265 S.E.2d 758 (1980).

In light of these holdings, we need not discuss the defenses of de facto corporation or corporation by estoppel. These defenses were available to the defendants only if the Bank was not a holder in due course. Since it was, those defenses cannot be asserted.

■ Upon our review of the amended motion for judgment, we conclude that the facts alleged and the appropriate inferences arising therefrom were sufficient to withstand a demurrer. Therefore, we hold that the trial court erred in sustaining the demurrers on the ground that no facts were alleged "that would impose personal liability upon the corporate officers even though they might

have executed a corporate obligation between dissolution . . . and reinstatement." More specifically, the Bank alleged, among other things, that the defendants were "either officers or directors, or both, of Isle of Eden, Incorporated;" that the defendants continued to transact business despite the dissolution; that executing the note was a part of transacting business; and that defendants refused to pay the note.

We are also of opinion that the Bank's alternative claim, that the defendants acted after dissolution as a partnership was sufficient to withstand a demurrer. In *Cullingworth* v. *Pollard*, 201 Va. 498, 111 S.E.2d 810 (1960), we discussed the prerequisites for establishing a partnership. We said the key element was the intent of the parties that they should be partners. We said also that a partnership required a community of interest as common owners of a business which would constitute a joint undertaking. Since the case was disposed of on demurrer, the question is not whether the Bank could prove a partnership but only whether one was alleged.

We think the allegations of partnership were sufficient. The Bank contended that the defendants agreed to carry on the business as co-owners for profit; that the execution of the note was done by McKinney and Walker as agents for the other defendants; and that the other defendants ratified and approved the execution on a certain date.

Finally, we reject Walker's assignment of cross-error which states that he should have been dismissed as a defendant because he signed the note as secretary and thus cannot be liable on the note. Walker misunderstands the claim against him. Personal liability is not asserted against him because he signed the note as Secretary. The contention is that he is liable on the note because the Isle of Eden partnership signature appears on the note and Walker is alleged to have been a partner. If the Bank proves a partnership, then Walker may be liable under that theory. The trial court correctly refused to dismiss Walker.

Moreover, the trial court correctly rejected Walker's statute of limitations argument. The Bank's suit was on the note and was not time-barred.

In light of all the foregoing, the judgment appealed from will be

affirmed in part, reversed in part, and the case remanded for further proceedings consistent with this opinion.

*Affirmed in part,
reversed in part,
and remanded.*