# CIRCUIT COURT OF GREENSVILLE COUNTY

First Community Bank, N.A.

v.

Community Youth Center

December 20, 2010

Case No. CL09-128

By Judge W. Allan Sharrett

 First Community Bank, N.A., seeks a declaratory judgment that it has valid title to property formerly owned by Community Youth Center ("CYC"). For the reasons that follow, the Court grants the motion seeking declaratory judgment.

 Five years after the Virginia State Corporation Commission ("SCC") terminated CYC's corporate status for failure to pay its registration fee, the president, vice president, and treasurer of CYC, all three of whom also served on the board of directors for CYC, obtained a loan on behalf of the corporation from First Community Bank to install a new swimming pool at the community center located on the property in question. The loan was secured by the property.

 After the corporation defaulted on its loan payments, the Bank initiated foreclosure action and subsequently purchased the property at a foreclosure sale. CYC responded by claiming that its president, vice president, and treasurer could not bind the corporation to the loan agreement because they lacked authority to obtain such a loan following the loss of CYC's corporate status. CYC contends that the transaction between the

Bank and the three CYC officer-directors was voidable as an action beyond the scope of their authority as trustees in liquidation.

First Community Bank, on the other hand, believes it was entitled to foreclose on the property, because the three individuals were authorized to act on behalf of CYC, either as officers, directors, or as trustees in liquidation. To support its claim, First Community Bank asserts that the other members of CYC's board of directors ratified the deal, evidenced by the initial corporate resolution authorizing the loan and the fact that CYC made numerous payments on the loan. The issue before the Court, then, is whether the three officer-directors were capable of entering into such a transaction with the Bank after CYC's corporate status had been automatically terminated.

## I. *Automatic Dissolution*

If a Virginia corporation fails to pay its annual registration fee in a timely manner, the corporation is automatically dissolved. Va. Code § 13.1-752. "An automatic dissolution under this section works a forfeiture of the corporate charter by operation of law, thereby stripping the corporation's legal mandate to exist." *Hudgins v. Internal Rev. Serv.*, 132 B.R. 115, 117 (E.D. Va. 1991). In other words, "[a] dissolved domestic corporation is no corporation at all." *McLean Bank v. Nelson*, 232 Va. 420, 426, 350 S.E.2d 651, 656 (1986).

Once dissolved, the corporation has a qualified existence, but only for the purpose of liquidation. Under the Virginia Code, when a corporation is dissolved for failure to pay its annual registration fees, the assets of the corporation pass to the directors as trustees in liquidation. The trustees are prohibited from continuing the business of the corporation. Instead, the trustees are charged with collecting the assets of the corporation, selling, conveying, and disposing of such of its properties that are not to be distributed in kind to its shareholders, paying, satisfying, and discharging its liabilities and obligations, and doing all other acts required to liquidate its business and affairs. *See* Va. Code § 13.1-752(C).

The property at issue in this case, however, was a corporate asset that was used as collateral for a loan secured after the dissolution. CYC automatically dissolved in 2000, but CYC continued to operate and hold itself out as a corporation well into 2005, when it obtained the loan. Although the SCC terminated CYC's corporate status in 2000, it appears that neither CYC nor the Bank became aware of that fact until 2008 when CYC filed for Chapter 11 bankruptcy. The bankruptcy case was dismissed in January 2009. At the loan closing in April 2005, the three officer-directors presented the Bank with a corporate resolution, which was certified by the secretary of CYC, that attested to these facts: that CYC was a validly existing corporation, that CYC was authorized to borrow

money from First Community Bank and pledge the property, and that the president, vice president, and treasurer were authorized to execute the loan documents. The Bank appeared satisfied that CYC was a valid corporation and agreed to fund the loan. The Bank never obtained a certificate of good standing from the SCC to verify whether or not CYC was a valid Virginia corporation.

Even though CYC lost its corporate existence in 2000, the Bank takes the position that the president, vice president, and treasurer of CYC nonetheless had authority to grant a deed of trust to the Bank via their positions in the company as either directors or trustees in liquidation, or, alternatively, that under the doctrine of corporation by estoppel, CYC continued to exist in 2005, and consequently, the officer-directors had authority to borrow money from the Bank in 2005 and grant a deed of trust, thereby giving the Bank a valid lien on the property.

## II. *Trustees in Liquidation*

The Court first finds that the three officer-directors did not have the authority as trustees in liquidation to secure a loan for the purpose of installing a new swimming pool. Part of the argument advanced by the Bank is that the president, vice president, and treasurer were trustees in liquidation who had either actual or apparent authority to grant a deed of trust to the Bank. To accept that argument would require finding that they incurred the debt in the course of winding up and liquidating the business. Bank records, however, reveal that the purpose of the loan was to install a new swimming pool. Such a purpose does not fit within any of the authorized wind-up activities contained in Va. Code §§ 13.1-752 or 13.1-745.

According to the statutes, the board of directors of a dissolved corporation is continued for the purpose of prosecuting or defending suits, paying the debts, distributing the assets, and other such matters. There is no evidence that the pool was being installed in order to help dispose of the community center to an outside creditor, for example, or to distribute the property among the shareholders. Accordingly, the Court finds that, under the terms of Va. Code §§ 13.1-745 and 13.1-752, the president, vice president, and treasurer could not, while acting as trustees in liquidation, have actual or apparent authority to grant a deed of trust to the Bank for such a purpose once CYC's corporate existence had ceased to exist, nor could their fellow directors, also acting as trustees in liquidation, permissibly ratify such acts.

## III. *Corporation by Estoppel*

The Court does find, however, that CYC existed as a matter of fact in 2005, even after its legal right to exist had expired in 2000. The three

officer-directors who secured the loan from the Bank were conducting corporate business under CYC's corporate name. As such, CYC must be held to be a corporation by estoppel and cannot defeat liability here by alleging that its corporate status had been terminated. "[A] business which holds itself out as a corporation to another party cannot raise, as a defense to an action against it by that party, the nonexistence of the corporation." *Hudgins*, 132 B.R. at 117.

At common law, once a corporation's existence was terminated, its capacity to sue, or to be sued, likewise was terminated. *Harris v. T.I., Inc.*, 243 Va. 643, 413 S.E.2d 605 (1992). That is, all debts due to or from the corporation were extinguished, at least so far as any right of action was concerned. In the course of time, however, Virginia has enacted statutes relating to the duties, powers, responsibilities, and liabilities of corporations as affected by their dissolution or the termination of their corporate existence.

Under the present Virginia statutes, a dissolved corporation carries on a qualified existence, but only for the purpose of liquidation. Va. Code § 13.1-752 provides that, when a corporation is automatically terminated for failure to pay its annual registration fee, its property and assets shall, under the direction of the board of directors now functioning as trustees in liquidation, be subject to the payment of its liabilities, and the surplus, if any, shall be distributed among its shareholders.

In respect to the Community Youth Center, there can be no doubt that it was the duty of the directors, under the provisions of this statute, to wind up the corporation's business when its corporate existence was automatically terminated. But the facts show that they did not do so. Consequently, so long as CYC held itself out as a valid corporation and carried on its business and contracted or incurred liabilities with or to third persons dealing with it as an existing corporation, CYC is estopped from denying the existence and viability of its corporate entity.

There is some question as to whether Virginia recognizes the doctrine of corporation by estoppel. *See, e.g., Hudgins*, 132 B.R. at 117 ("It is not clear whether the doctrine of corporation by estoppel is recognized in Virginia. Some old cases applied the doctrine, but their holdings may not have survived revisions of Virginia's corporations statutes."). The only recent Virginia Supreme Court case to consider the doctrine of corporation by estoppel was decided on other grounds. *See Nelson*, 232 Va. at 431, 350 S.E.2d at 659 ("In light of these holdings, we need not discuss the defenses of de facto corporation or corporation by estoppel."). The source of this confusion is, as *Hudgins* alludes to, Virginia's adoption of the Model Business Corporations Act. *See* Va. Code §§ 13.1-1000 *et seq.* The 1950 and 1969 versions of the Model Act, for instance, made it unmistakable that the related doctrine of de facto corporation had been abolished. *See* Model Bus. Corp. Act § 56, cmt. (2d ed. 1971): "Under the unequivocal

provisions of the Model Act, any steps short of securing a certificate of incorporation would not constitute apparent compliance. Therefore a de facto corporation cannot exist under the Model Act."; *see also* § 146, cmt. (2d ed. 1971): "Abolition of the concept of de facto incorporation, which at best was fuzzy, is a sound result. No reason exists for its continuance under general corporate laws, where the process of acquiring de jure incorporation is both simple and clear. The vestigial appendage should be removed." But the question remained whether corporation by estoppel continued to exist. Then, as courts around the country were debating that issue, the authors of the Model Act did an "about-face" in the 1984 Model Business Corporation Act. The official comment to the 1984 Model Act, § 2.04, acknowledged that efforts to abolish the doctrines of de facto corporation and corporation by estoppel had failed and that the doctrines continued to be applied even in states where corporate existence commences only upon filing of articles of incorporation. The comment states in relevant part as follows:

> A review of recent case law indicates . . . that even in states with . . . [statutes that impose personal liabilities for preincorporation transactions or obligations], courts have continued to rely on common law concepts of de facto corporations, de jure corporations, and corporations by estoppel that provide uncertain protection against liability for preincorporation transactions. These cases caused a review of the underlying policies represented in earlier versions of the Model Act and the adoption of a slightly more flexible or relaxed standard. Incorporation under modern statutes is so simple and inexpensive that a strong argument may be made that nothing short of filing articles of incorporation should create the privilege of limited liability. A number of situations have arisen, however, in which the protection of limited liability arguably should be recognized even though the simple incorporation process established by modern statutes has not been completed.

1 Model Bus. Corp. Act Ann., § 2.04, official cmt. at 2-46 (3d ed. 2002).

"The crucial point about the 1984 revision of the MBCA is that, unlike previous incarnations of the model statute, it did not seek to abolish de facto corporation outright or question its applicability." Emeka Duruigbo, *Avoiding a Limited Future for the De Facto LLC and LLC by Estoppel*, 12 U. Pa. J. Bus. L. 1013, 1032 (2010). Instead, the 1984 version "allows sufficient room for the de facto and estoppel doctrines to operate through § 2.04, which provides that 'all persons purporting to act as or on behalf of a corporation knowing that there was no incorporation under this Act, are jointly and severally liable for all liabilities while so acting'." *Id.*

Thus, even though Virginia modified slightly the language of Section 2.04 when it adopted the 1984 Model Act, *see* Va. Code § 13.1-622 (providing no liability to any person "who also knew that there was no incorporation"), "there is hardly any question about the survival of the doctrines under the current formulation" of the Model Business Corporation Act. *Duruigbo*, at 1032. As one commentator put it, "The striking thing about the 1984 MBCA is that it returns the situation for all practical purposes to where it was in 1950." Norwood P. Beveridge, *Corporate Puzzles: Being a True and Complete Explanation of De Facto Corporations and Corporations by Estoppel, Their Historical Development, Attempted Abolition, and Eventual Rehabilitation*, 22 Okla. City U. L. Rev. 935, 971 (1995).

In light of Virginia's adoption of the 1984 Model Business Corporation Act, the Court finds that case law in effect prior to the 1950 Model Business Corporation Act which applied the doctrine of corporation by estoppel is still good law. *See Dickenson v. Boyd*, 167 Va. 90, 187 S.E. 479 (1936) (bank which had dealt with business as a corporation was estopped to deny its corporate status); *Gudebrod v. Ward's Administrator*, 165 Va. 444, 182 S.E. 118 (1935) (president of organization conducted as a corporation could not attack its corporation status in an action challenging his removal by the directors).

Indeed, as further evidence that the doctrines of corporation by estoppel and de facto corporation are recognized in Virginia, the Court points to Va. Code § 13.1-754, which, provides in pertinent part that:

> Upon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of termination of corporate existence, and any liability incurred by the corporation or a director, officer, or other agent after termination of corporate existence and before the reinstatement shall be determined as if the termination of corporate existence had never occurred.

Va. Code Ann. § 13.1-754. Thus, if this were a situation in which CYC's corporate existence was terminated for failure to pay its annual registration fee and later the corporation became reinstated by complying with § 13.1-754, then CYC would be recognized as a de facto corporation during the time between such termination and reinstatement. Any third party having contracted with it as such during such time could not raise the question of its corporate capacity, nor could CYC shield itself by asserting a lack of corporate capacity.

The principle to be deduced from the cases cited above should be extended to the facts of this case as well. A corporation acting and carrying on its corporate business under its corporate name for more than five years after the SCC automatically terminated its corporate existence should

be deemed a corporation by estoppel. CYC may not have been a de jure corporation, but the Court cannot reasonably ignore the actual existence of such a corporation. CYC continued its operations well beyond 2000 to such an extent that it believed the community center would benefit from a new swimming pool. CYC obtained a loan from First Community Bank for that purpose and made numerous payments towards that loan before ultimately defaulting on the loan. These acts and such dealings are not necessarily legally ineffective for a failure to pay the annual registration fee in 2000.

In order to relieve CYC of its loan obligations, the corporation must have ceased to exist in 2000 both in law and in fact. The Court finds that CYC ceased to exist only in law, not in fact. CYC's directors failed to wind up the corporate business when CYC's corporate existence was automatically terminated, as was their duty under the provisions of Va. Code § 13.1-752. Consequently, they cannot relieve the corporation from liability for acts done in its name and during its actual existence as a corporation by estoppel.

## IV. *Conclusion*

For these reasons, the Court finds that the president, vice president, and treasurer of CYC were capable of entering into an agreement with the Bank on CYC's behalf. The Court also finds the foreclosure sale to be valid. Accordingly, the Court hereby grants First Community Bank's Motion and declares that (1) First Community Bank was granted a valid deed of trust lien on the property to secure the loan pursuant to the deed of trust and (2) First Community Bank, as purchaser at the foreclosure sale, has fee simple title to the property.