# 𝔖taunton

S. R. HURLEY, ET ALS. V. JACK BENNETT, RECEIVER FOR FIRST
NATIONAL BANK OF GRUNDY, VIRGINIA, ET AL.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*S. H. & George C. Sutherland,* for the appellants.

*H. Claude Pobst,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

On the threshold of this appeal, we are met with a motion to dismiss, based on two grounds: first, because the appeal bond was not completed within the six months required by statute; second, because the "bond is not in proper form." The last amendment adopted in 1932 to subsection 8 of section 5 of the Code (Acts 1932, ch. 31), provides that in computing time, the day on which the event or judgment occurred shall be excluded. The final decree, from which this appeal was obtained, was entered, on April 24, 1933. Hence, the six months period did not begin to run until April 25, 1933. The petition and record were presented to Chief Justice Campbell, on October 23, 1933, who on November

8, 1933, granted the appeal, and on the same day delivered the petition and record to the clerk. In computation of the six months period, the time the petition was in the hands of this court, and unacted upon, is excluded. See Code, section 6355. The execution of the appeal bond was completed November 9, 1933; excluding the time from October 23rd, to November 8th, it is apparent that the bond was executed within the time required by statute.

The issues presented in the case, were raised in a petition filed by Jack Bennett, receiver, and W. A. Lester, in a cause pending in the Circuit Court of Buchanan county, under the caption *"First National Bank of Iaeger, W. Va. v. P. J. Hurley et als."* The objection to the form, is that the bond shows that it was given in a suit "depending in said court in which Jack Bennett, receiver, is the complainant, and P. J. Hurley et als were defendants." When the petition was filed in the original cause it was remanded to rules and there matured as to P. J. Hurley and all the defendants named therein. There is no doubt that all the obligors intended to execute a supersedeas bond in strict conformity with the statute. The mistake was a mere misprision of the clerk, and constitutes no defense to an action on the bond. *Northern Neck Mutual Fire Ass'n* v. *Turlington,* 136 Va. 44, 116 S. E. 363. The motion to dismiss is overruled.

The petition alleged that Jack Bennett, receiver, and W. A. Lester were judgment creditors of S. R. Hurley; that their debts were contracted prior to June 4, 1927; that on that date, S. R. Hurley, without valuable consideration and for the purpose of hindering, delaying and defrauding his creditors, conveyed four tracts of land and an undivided interest in another tract, to his wife, P. J. Hurley. S. R. Hurley, P. J. Hurley and certain lien creditors of P. J. Hurley, to-wit, The City Bank, Green Charles, F. W. Smith, J. W. Shortridge, G. E. Atkins, trustee, the Clintwood Bank and Jack Bennett, as receiver, of the First National Bank of Iaeger, W. Va., were made parties defendant to the petition.

S. R. Hurley, P. J. Hurley and J. W. Shortridge demurred, and filed their answers, in which they deny the material averments of the petition. Each side took and filed depositions in support of their allegations. On the hearing the chancellor rendered a decree, declaring that said deed was voluntary and void, as to existing creditors of S. R. Hurley. From that decree this appeal was allowed.

P. J. Hurley, S. R. Hurley, J. W. Shortridge, City Bank, and Clintwood Bank, Incorporated, appellants, assigned as error the several defenses raised by the answers. In our view of the case, it is necessary to consider only one question, i. e., whether or not the petitioners, at the time of filing their petition, had waived their right to attack the deed from S. R. Hurley to his wife. Consideration of this question necessitates a review of the history of this litigation.

On April 17, 1928, the First National Bank of Iaeger, West Virginia, in the circuit court of Buchanan county, obtained a judgment in the sum of $3,000 against S. R. Hurley, P. J. Hurley and F. E. Morgan. The bank then instituted this suit, and at first July rules, 1928, filed its bill, for the purpose of subjecting the lands, owned by each of these three judgment debtors, to sale to satisfy the liens thereon. The First National Bank of Grundy, G. W. Mullens and W. A. Lester as lien creditors were made parties defendant to the suit. The cause was duly referred to A. A. Charles, commissioner, for the purpose of ascertaining what real estate was owned by each judgment debtor and to take an account of the liens thereon. The specific inquiries that the commissioner was directed to make were stated thus:

(1) "To report whether there are personal assets in the hands of the defendants, P. J. Hurley, S. R. Hurley and F. E. Morgan, sufficient to pay off and discharge the complainant's judgment.

(2) "To report all the liens and judgments against the said P. J. Hurley, S. R. Hurley, and F. E. Morgan and their respective priorities.

(3) "To report the real estate owned by the said P. J.

Hurley, S. R. Hurley and F. E. Morgan, and whether it will in five years rent for enough to pay off and discharge the liens and judgments against same, as well as the cost of this suit.

(4) "To report any other matters deemed necessary by the said commissioner."

On November 10, 1928, Commissioner Charles filed his report, in which among other things, it is stated, that P. J. Hurley owned in fee, four small tracts of land, and an undivided interest in another tract, all conveyed to her by deed dated June 4, 1927, from her husband, S. R. Hurley. Among the three liens reported as binding upon the lands of P. J. Hurley was a deed of trust bearing date November 26, 1927, in which she and her husband had conveyed a part of the same land to Jennings L. Looney, trustee, to secure the payment of a debt for $1,700, then held by the First National Bank of Grundy.

No exceptions were taken to this report and it was confirmed in all particulars, by a decree entered November 26, 1928. By this same order, the real estate of each of the judgment debtors, or so much thereof as might be necessary to satisfy the liens thereon, was directed to be sold, at auction. For this purpose, F. M. Clevinger was appointed special commissioner.

Pursuant to this, and other decrees subsequently entered, a large part of the real estate of each of the judgment debtors was sold. All of these sales were reported to the court and were confirmed by proper decrees.

Upon suggestion, that, since November 10, 1928, other parties had obtained liens against the lands of the three judgment debtors, the cause was again referred to Commissioner Charles, to ascertain and report thereon. This he did, and among other matters his second report showed what lands of P. J. Hurley had been sold, and what remained unsold, together with the liens and the order in which they should be paid. To this report Jack Bennett, receiver, made the following exceptions:

(1) "Because exceptor was given no notice of this accounting and report.

(2) "Because exceptor's judgment should have been reported as being prior to the judgment of *City Bank, Inc.* v. *S. R. Hurley, and P. J. Hurley,* but is reported as being subsequent thereto.

(3) "Because the report is incomplete, inaccurate and decree cannot be based thereon."

Subsequently these exceptions were sustained, and the cause was referred to E. J. Sutherland, special commissioner, among other directions, to ascertain the land of P. J. Hurley which had been sold, that remaining unsold, and the liens binding thereon. This commissioner, on January 2, 1931, filed a detailed report from which it appears that there were eleven liens on the land of P. J. Hurley totaling $14,912.14. To this sum should be added $3,690.77, the amount of the judgment in favor of the First National Bank of Iaeger, which without a decree for distribution seems to have been paid out of the proceeds of the sale of the P. J. Hurley land. Hence the total liens against this land appear to have been $18,602.91. Included in this total, and reported as a third lien on certain parts of the lands owned by P. J. Hurley, was the deed of trust securing to the First National Bank of Grundy the principal sum of $1,700, which with interest calculated by the commissioner, as of the date of the report, totaled $2,004.30. Certain exceptions were taken to this report which were not made a part of the record in this court. In passing upon these exceptions the court by decree dated September 23, 1931, made the following corrections:

"2nd. That the report of liens against P. J. Hurley, page 23, of the report of E. J. Sutherland, special commissioner, filed in the cause January 2, 1931, be and the same is hereby corrected so as to show the *'Sixth Lien Tract Three'* (which is a deed of trust executed by P. J. Hurley and S. R. Hurley to G. E. Atkins, trustee) as *Fifth Lien* and so as to show the *'Fifth Lien'* (which is a judgment in favor of the Clintwood Bank against S. R. Hurley and P. J. Hurley for $893.26) to

be the *Sixth Lien*—in other words, the said fifth lien and sixth lien reported by said Commissioner Sutherland should change places.

"That said report of E. J. Sutherland be further corrected on page 24, so as to show the *'Ninth Lien'* reported by him to be the *'Eleventh Lien';* and also so as to show the *'Tenth Lien'* to be the, Ninth Lien; and also so as to show the 'Eleventh Lien' reported by him to be the *'Tenth Lien.'* "

The debt reported by E. J. Sutherland, commissioner, as the tenth lien in the. order of priority, is a judgment for $868.39, obtained by Jack Bennett, receiver, against P. J. Hurley. The above decree in confirming this part of the report, changed, presumably, at the request of Jack Bennett, receiver, the order of priority of the liens and made this judgment the ninth lien instead of the tenth. One exception raised by Jack Bennett, receiver, but not made a part of the record, was referred to Commissioner E. J. Sutherland to take an account and report thereon. This exception seems to have been abandoned, as on November 25, 1931, the petition, attacking the validity of the deed of June 4, 1927, was filed.

It will be noted that the First National Bank of Grundy and W. A. Lester were parties to this cause from its inception, in July, 1928; that Jack Bennett was appointed receiver for the First National Bank on December 31, 1929, who as such, immediately appeared and participated in the proceedings; that George W. Mullens, as beneficiary in a certain deed of trust, was also made a party to the original bill; that he obtained a judgment against S. R. Hurley which, after the institution of the suit, he assigned to W. A. Lester; that in the sale of the P. J. Hurley lands, by F. M. Clevinger, commissioner, the First National Bank of Grundy and W. A. Lester bought certain lots which were reported as a sale of a part of the P. J. Hurley lands and so confirmed. The owner of the land, the number, the amount, the holders of the liens, and their order of payment were judicially determined by interlocutory decrees.

It was only after these facts were reported to and confirmed by the court, that the land was ordered sold.

The pleading filed by Jack Bennett, receiver, and W. A. Lester, except for the use of the word "petitioners" has all the essentials of an original bill in chancery. The prayer is couched in the identical language of a prayer in an original bill. It does not specifically ask the court to reopen, modify, or change its former decrees, which as heretofore shown are totally inconsistent with the specific prayer set forth in the petition signed by parties to the cause.

The usual method of amending or modifying decrees is either by filing a bill of review after rendition of a final decree; or by filing a petition to rehear after rendition of an interlocutory decree. The only new matter alleged, is that the deed of June 4, 1927, from S. R. Hurley to his wife P. J. Hurley, was a deed of gift. But there is no allegation showing when petitioners ascertained the knowledge of this alleged fact.

Strictly construing the pleading it is neither a bill of review, nor a petition to rehear; but inasmuch as both sides, without so naming it, in effect, have treated it as a petition to rehear, we will so regard it.

The court undoubtedly has power to change, modify, or set aside an interlocutory decree both before and after the adjournment of the term in which it is entered. However, the reopening of such a decree is not a matter of right, but rests in the sound discretion of the chancellor. It is settled that, where consideration of justice requires a rehearing, the courts are not as reluctant to grant relief upon a petition to rehear, as upon a bill to review. *Richardson* v. *Gardner*, 128 Va. 676, 105 S. E. 225, 12 A. L. R. 1383; *Lile's Pleading and Practice*, section 197.

Judge Keith in *Spilman* v. *Gilpin*, 93 Va. 698, 703, 25 S. E. 1004, 1007, on this point said: "A bill of review lies also for error apparent upon the face of the record, but the proofs, unless they are set out on the face of the decree, or admitted in the pleadings, cannot be considered upon a bill of review. See *Thomson* v. *Brooke*, 76 Va. 160. In this

respect a court has far greater power in dealing with interlocutory decrees upon a petition to rehear than with final decrees upon a bill of review. It is difficult to define the precise limits of the duty of courts upon petitions to rehear. It may be safely stated, however, as being established by the authorities that where a case has not been heard upon the merits, but an interlocutory decree has been rendered upon the bill taken for confessed, and other circumstances tending to excuse the defendant's default in making his defense at 'the proper time appear, the rehearing of the decree upon a petition filed for that purpose showing that the defendant had a meritorious defense, may, in the discretion of the court, be entertained. The discretion thus exercised is, of course, a judicial discretion, and one not to be exercised arbitrarily, either in granting or withholding the relief sought."

Judge Lewis in *Trevelyan's Adm'r* v. *Lofft,* 83 Va. 141, 145, 1 S. E. 901, says: "Moreover, the appropriate mode of applying for a rehearing of an interlocutory decree, rendered on the merits, to enable a party to introduce additional evidence, is by petition; and the petition must not only allege that the matter sought to be introduced was discovered after the rendition of the decree, but it must be accompanied by an affidavit that the newly discovered evidence could not have been produced, with the use of reasonable diligence, in time to have been used when the decree was pronounced." See *Newberry et al.* v. *Stuart,* 86 Va. 965, 11 S. E. 380; *Woods* v. *Early,* 95 Va. 307, 28 S. E. 374; *Baker* v. *Watts,* 101 Va. 702, 44 S. E. 929.

In *Downing* v. *Huston, etc., Co.,* 149 Va. 1, 9, 141 S. E. 134, 136, this is said: "The petitioner's right to relief on such rehearing," after the entry of an interlocutory decree, "depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified."

Petitioners do not point out any error on the face of the record, and they fail to allege, or even suggest any

excuse for their failure to present these matters to the commissioner, or to the court on exceptions to his report.

There is another reason which bars the receiver for the First National Bank of Grundy, from successfully attacking the deed in question. This bank on November 26, 1927, accepted as security for the payment of a debt, a deed of trust, by which a part of the land included in the deed from S. R. Hurley to his wife was conveyed to a trustee for its benefit. In numerous reports, that the commissioners made in the cause, it was stated that this deed was a lien on the land therein described, and that the lien was owned by the First National Bank of Grundy, or Jack Bennett its receiver. It is presumed that the amount of the debt was proven before the commissioners by the owner of the lien. There has been no offer to surrender this lien. This bank or its receiver has, consistently, and insistently, maintained that it is the owner of this debt and by virtue of the said deed of trust had and has a lien on the real estate therein described. This contention the court sustained. Thus before the institution of the suit, and for more than three years thereafter, the First National Bank of Grundy, or its receiver, has recognized the validity of the deed in controversy. It suggests no reason for the change of its position. A party cannot in the course of the same litigation occupy inconsistent positions. Upon that rule election is founded; a litigant will not be allowed in the language of the Scotch law to "approbate" and "reprobate." Where he has an election between inconsistent courses of action, he will be confined to that which he first adopts. The first election, if made with knowledge of the facts, is itself binding; *Arwood* v. *Hill's Adm'r*, 135 Va. 235, 117 S. E. 603; *Nagle* v. *Syer*, 150 Va. 508, 143 S. E. 690; *White* v. *Bott*, 158 Va. 442, 158 S. E. 880, 163 S. E. 397, and cases therein cited.

This would ordinarily end the discussion, but the receiver contends, that S. R. and P. J. Hurley, by reason of an agreement, made with it on June 24, 1929, are estopped from making any defense to his attack on the validity of

the deed of June 4, 1927. The true intent of the agreement is not very clear. It was not recorded, and was made after the report of Commissioner Charles had been confirmed. In any event it would not be binding on lien creditors without notice.

The contract is dated just two days before the first auction sale, held on June 26, 1929, by Commissioner Clevinger. It provided, that in consideration of the bank's promise to "bid in enough property to satisfy the judgments" against both S. R. and P. J. Hurley, the latter promised to permit the proceeds from the sale of her land to be applied on the debts of her husband. It is conceded that the bank did not comply with its undertaking. Indeed, it failed to pay for the lands it did buy, and one tract for which it agreed to pay $4,000 was ordered resold at its risk. The contract was based upon mutual promises of the parties. The party who commits the first breach of a contract, is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform.

Appellees assign cross-error to the action of the court in permitting S. R. and P. J. Hurley to file their answers, after ninety days from the date process was returned executed. The process was returnable to second December rules which began December 21, 1931. In January, 1932, counsel for appellants, went to the clerk's office and asked for the papers in the case, he was informed that E. J. Sutherland, the commissioner to whom the cause had been referred, had the papers in his office at Clintwood; when he examined the papers there, he found that the petition, which his clients were required, to answer, was not among them. Early in March he wrote opposing counsel disclosing these facts, and was immediately furnished with an office copy. Within two weeks thereafter he sent counsel for appellees a copy of the answers and delivered the original to the clerk, who noted thereon "filed March 22, 1932." At the following April term, the court rendered a decree permitting the answers to be filed. Ordinarily, when a case has matured at rules, no pleading thereafter lodged with the

clerk may be, strictly speaking, a paper filed in the cause; but where a statute, such as 6122 of the Code, requires a pleading to be filed within a given time, and there is no term of court between the maturity of the case at rules and the expiration of the time fixed by statute, the filing of such pleading in the clerk's office within the time required is sufficient to bar the running of the statute. This should be followed by an order of the court spread upon the record at the next succeeding term.

In this case it does not appear that counsel was able to procure the original petition until after he had prepared and filed the answers. No delay was occasioned by appellants' action. There was no regular term of court between the maturing of the case at rules, and the April term. Under the circumstances we find no error in the ruling of the court ordering the answers to be filed. What has been said above disposes of the material issues in the case and definitely fixes the rights of the different parties, hence it is unnecessary to consider other assignments of error, or cross-error.

For the reason stated the decree of which complaint is made is reversed, and the case remanded for further proceedings to be had in accord with the views herein expressed.

*Reversed and remanded.*