Present: All the Justices

APARTMENT INVESTMENT AND
MANAGEMENT COMPANY

v. Record No. 982474

NATIONAL LOAN INVESTORS, L.P.

                              OPINION BY JUSTICE BARBARA MILANO KEENAN
                                       September 17, 1999
WINTHROP MANAGEMENT, ET AL.

v. Record No. 982475

NATIONAL LOAN INVESTORS, L.P.

            FROM THE CIRCUIT COURT FOR THE CITY OF RICHMOND
                     Melvin R. Hughes, Jr., Judge


     In this appeal, we consider whether the trial court erred
in awarding judgment based on a promissory note, which was
assigned without the consent of the maker in violation of a
requirement stated in the note.

     This appeal arises from financial transactions involving
various related business entities in the commercial real estate
industry. The parent organization is Winthrop Financial
Associates, L.P. (Winthrop Financial), which is the sole
shareholder of First Winthrop Corporation (First Winthrop).
First Winthrop, in turn, holds interests in various partnerships
and corporations involved in the acquisition and management of
commercial property. First Winthrop primarily manages its
commercial properties through Winthrop Management, a

Massachusetts general partnership in which First Winthrop owns a 99% interest.

The property acquisition affiliate of First Winthrop involved in this appeal is Eight Winthrop Properties, Inc. (Eight Winthrop), which is the general partner of Winthrop Southeast, L.P. (Winthrop Southeast). Eight Winthrop and Winthrop Southeast were formed in 1991 for the purpose of acquiring eight apartment complexes located in Virginia, North Carolina, and South Carolina (the Apartments). Winthrop Southeast is the general partner of the two limited partnerships which own the Apartments, Southeastern Income Properties I and Southeastern Income Properties II (SIP-I and SIP-II). The limited partners of SIP-I and SIP-II are about 4,000 individual investors.

As part of the acquisition of the Apartments in August 1991, Winthrop Southeast borrowed about $1,161,000 from Investors Savings Bank, F.S.B (Investors Bank), a federally chartered savings bank in Richmond. In the promissory note executed by Winthrop Southeast to Investors Bank (the Note), Winthrop Southeast agreed to repay the loan in installments beginning in February 1993.

The Note, which defined the term "Noteholder" to include the successors and assigns of Investors Bank, provided that "this Note may not be transferred or assigned by Noteholder

without the prior written consent of [Winthrop Southeast]."  The Note also contained a non-recourse provision that essentially provided as the sole remedy on default two security agreements, one of which is relevant to this appeal (the Security Agreement).

In the Security Agreement, Winthrop Management pledged to Investors Bank, as collateral for Winthrop Southeast's loan, a security interest in the income, fees, and profits that Winthrop Management received under contracts for managing the Apartments. The Security Agreement contained a non-recourse provision in favor of Winthrop Management and Winthrop Southeast that was virtually identical to the non-recourse provision in the Note.

No payments were ever made on the Note or pursuant to the Security Agreement.  In December 1991, the Resolution Trust Corporation (RTC) was appointed receiver for Investors Bank.  An agent acting on behalf of RTC notified Winthrop Southeast in writing that the loan was in default in July 1994.  In August 1995, RTC assigned its interest in the Note and Security Agreement to RTC Commercial Loan Trust 1995-NP1A (the Loan Trust), a Delaware business trust.  The parties to this appeal agree that the Loan Trust is not part of the RTC.

In February 1996, the Loan Trust filed an action against Winthrop Management in the United States District Court for the Eastern District of Virginia.  The Loan Trust asked that a

receiver be appointed to assume control of Winthrop Management's administration of the Apartments and to collect and pay over to the Loan Trust "all income" derived from that source. While the action was pending, Winthrop Southeast, acting as the general partner of SIP-I and SIP-II, terminated the management agreements for the Apartments with Winthrop Management. Three days later, Winthrop Southeast executed new management agreements with Insignia Management Corporation (Insignia).[1] Soon thereafter, Insignia transferred the management of six other, unrelated apartment complexes to Winthrop Management.

The action in the federal district court was later dismissed for lack of jurisdiction. <u>RTC Commercial Loan Trust 1995-NP1A v. Winthrop Management</u>, 923 F.Supp. 83 (E.D.Va. 1996). The Loan Trust then brought this action in the trial court, naming as defendants Winthrop Management, First Winthrop Corporation, Winthrop Southeast, SIP-I, SIP-II, Eight Winthrop, and Insignia.[2]

Prior to trial, RMA Partners, L.P., on behalf of the Loan Trust and without the prior written consent of Winthrop Southeast, assigned its interest in the Note and the Security

---

[1]While this appeal was pending, Apartment Investment and Management Company became the successor in interest to Insignia and was substituted as a party in this appeal. We will continue to refer to this party as Insignia in this opinion.

[2]The trial court dismissed or nonsuited all claims against SIP-I and SIP-II.

4

Agreement to National Loan Investors, L.P. (NLI). The Loan Trust also assigned to NLI its interest in "those causes of action for damages to property" arising under the Note and the Security Agreement. NLI later was substituted as plaintiff in place of the Loan Trust.

The trial court heard evidence in a bench trial on ten counts of an amended bill of complaint, five of which are the subject of this appeal.[3] Those five counts included various allegations by NLI against Winthrop Management, First Winthrop, Winthrop Southeast, and Insignia. NLI alleged that Winthrop Management transferred the income, fees, and profits from its management of the Apartments to First Winthrop with the intent to hinder and delay creditors in their efforts to obtain payment under the Security Agreement for the Note. NLI sought an order setting aside those transfers, as well as a judgment in the amount of the funds conveyed.

NLI also alleged that Winthrop Management and Insignia entered into an "exchange of management rights" with intent to hinder, delay, or defraud the holder of the Security Agreement. NLI sought the imposition of a constructive trust "over all

---

[3]In its final order, the trial court initially awarded judgment in favor of NLI on an additional count, Count IX, but later in the order stated: "On Count IX, the Court does not enter judgment for plaintiff because, in light of the relief granted under Counts VII and VIII, the relief sought under Count

5

income, fees, and profits" from the Apartments then being managed by Insignia, as well as a personal judgment against Insignia.

Finally, NLI sought a judgment against Winthrop Southeast for the full amount due under the Note. NLI alleged that Winthrop Southeast remained liable on the Note based on an exception in the Note's non-recourse provision, which provided that Winthrop Southeast would be liable for losses resulting from any fraudulent acts or material misrepresentations made by Winthrop Southeast or its partners.

At trial, NLI asserted that an "Event of Default" occurred under the Note in July 1994, 15 days after the RTC gave Winthrop Southeast written notice that the loan was in default. After hearing evidence on the amended bill of complaint, the trial court awarded judgment in favor of NLI on the counts included in this appeal. The court found that the total amount due on the Note was $2,085,045.82, including attorneys' fees and costs, and entered judgment in that amount, plus interest, against Winthrop Southeast. The court also entered judgment in lesser amounts against Winthrop Management, First Winthrop, and Insignia on the four other counts involved in this appeal. The court's order provided that sums recovered under those other counts "be

_____

IX is unnecessary." Since final judgment was not entered on Count IX, we will not address it in this appeal.

6

considered as a payment towards the satisfaction of the judgment [on the Note]."

On appeal, Winthrop Management, First Winthrop, Winthrop Southeast, Eight Winthrop, and Insignia (collectively, the defendants) first argue that the trial court erred in awarding judgment in favor of NLI, because the entire judgment was predicated on NLI's purported status as holder of the Note. The defendants assert that since the evidence was uncontested that Winthrop Southeast did not give prior written consent to the assignment from the Loan Trust to NLI as required by the terms of the Note, NLI failed to establish that it was a valid holder by assignment. Thus, the defendants contend that they should have been awarded judgment on all counts of the amended bill of complaint.

In response, NLI agrees that the counts involved in this appeal are based exclusively on the Note and the collateral securing the Note. However, NLI contends that, although the Note provided that assignments be made with Winthrop Southeast's prior written consent, the Note did not explicitly prohibit or invalidate assignments made without such consent. At most, NLI argues, the assignment from the Loan Trust to NLI without Winthrop Southeast's consent constituted a breach of the Note. NLI also asserts that since Winthrop Southeast first breached the terms of the Note by its default, Winthrop Southeast cannot

7

rely on the consent requirement in defense of its nonpayment. We disagree with NLI.

In Paragraph 17 of the Note, the term "Noteholder" is defined to include Investors Bank, as well as the "successors and assigns" of Investors Bank. However, Paragraph 17 also provides that "this Note may not be transferred or assigned by Noteholder without the prior written consent of the Maker [Winthrop Southeast]."

The evidence was uncontested that Winthrop Southeast did not give prior written consent to the assignment of the Note from the Loan Trust to NLI. William Carter Smith, vice president of NLI, conceded this fact when he testified that neither NLI nor the Loan Trust sought such prior written consent before NLI acquired the Note.

NLI's failure to obtain written consent to an assignment of this non-recourse obligation was not merely a breach of the Note's terms. Prior written consent was a condition precedent to assignment of the Note and, since such consent was not obtained, the Loan Trust's purported assignment to NLI was invalid. Thus, NLI was not entitled to maintain the present causes of action, which are all predicated on NLI's incorrect assertion that it was a valid "Noteholder."

We find no merit in NLI's contention that our decision in Hurley v. Bennett, 163 Va. 241, 176 S.E. 171 (1934), requires a

8

different result.  Quoting Hurley, NLI contends that "[t]he party who commits the first breach of a contract, is not entitled to enforce it . . . against the other party for his subsequent failure to perform."  163 Va. at 253, 176 S.E. at 175; see also Federal Ins. Co. v. Starr Elec. Co., 242 Va. 459, 468, 410 S.E.2d 684, 688-89 (1991).  NLI argues that under this principle, the defendants cannot attack NLI's status as a purported "Noteholder" because Winthrop Southeast committed the first breach of contract in failing to make payment on the note in 1993.  We disagree.

NLI's argument effectively asks us to allow a stranger to the Note, NLI, to enforce the Note against a party to the Note, Winthrop Southeast, because that party is in default.  As we explained above, Winthrop Southeast's failure to consent to the assignment of the Note to NLI precluded the establishment of a contractual relationship between NLI and the Note's maker, Winthrop Southeast.  Thus, NLI's failure to obtain this consent was not a subsequent failure of performance of a contract under the rule stated in Hurley, but was an unsatisfied precondition to the formation of a valid contract between the parties. Accordingly, Winthrop Southeast's initial breach of the Note did not preclude it from asserting that NLI failed to establish

9

itself as a "Noteholder" entitled to assert the present causes of action.[4]

NLI argues, nevertheless, that the Note's restriction on assignment is preempted by 12 U.S.C. § 1821(d)(2)(G)(i)(II), which provides in relevant part that the RTC may "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer."  NLI contends that it was entitled to the benefit of this provision, because the Loan Trust was a holder in due course, and that NLI, as the transferee of a holder in due course, obtained the same statutory right to receive an assignment of the Note without the prior written consent of Winthrop Southeast.  We disagree.

While the RTC's assignment of the Note to the Loan Trust without the consent of Winthrop Southeast was permitted under the above statute, that assignment did not confer on the Loan Trust the status of a holder in due course of a negotiable instrument.  The Loan Trust was not a holder in due course because, among other things, the Note was not a negotiable instrument.  As a non-recourse obligation, the Note lacked negotiability because it did not constitute an unconditional

---

[4]We also find no merit in NLI's unsupported contention that Winthrop Southeast's failure to object to prior assignments of the Note in which its written consent was not obtained bars the defendants from asserting that defense here.

promise to pay a fixed amount of money.  See Code § 8.3A-104;

United Nat'l Bank of Miami v. Airport Plaza Ltd. Partnership,

537 So.2d 608, 610 (Fla.App. 1988).  A promissory note is

rendered conditional when it provides that the borrower will not

be liable personally for payment in the event of default and

limits recourse for payment to certain tangible property or

other collateral.  See id.  Thus, since the Note was not a

negotiable instrument, neither NLI nor the Loan Trust could

assert any right that a holder in due course may have had to

rely on in the statutory provision at issue.  See Code § 8.3A-

302; Levin v. Virginia Nat'l Bank, 220 Va. 1087, 1091, 265

S.E.2d 758, 760 (1980); Brantley v. Karas, 220 Va. 489, 493, 260

S.E.2d 189, 192 (1979).[5]

For these reasons, we will reverse the trial court's

judgment and enter final judgment for the defendants.

Reversed and final judgment.

---

[5]Since NLI's failure to establish that it was a "Noteholder"
is dispositive of this appeal, we need not address the
defendants' remaining assignments of error.

11