# CIRCUIT COURT OF FAIRFAX COUNTY

Ashley Brown

v.

Hunter S. Tashman
and Hunter Scott Tashman, M.D., P.C.

May 2, 2016

Case No. CL-2014-9747

By Judge Grace Burke Carroll

This case is before the Court on Defendants', Hunter S. Tashman, M.D. ("Dr. Tashman"), an obstetrician and gynecologist, and his practice, Hunter Scott Tashman, M.D., P.C. (collectively "Defendants"), Plea in Bar. After the hearing and oral argument by counsel for Plaintiff and Defendants, the Court took this matter under advisement. For the reasons set forth below, Defendants' Plea in Bar is denied.

## I. *Background*

Ashley Brown brings this medical malpractice suit against Defendants, alleging that Dr. Tashman acted negligently in his care and treatment of Plaintiff during the course of her third pregnancy and at the conclusion of her second pregnancy. As a result of Dr. Tashman's alleged negligence, Plaintiff claimed that she sustained physical injury and suffered emotional distress during her third pregnancy. Plaintiff further alleged that Hunter Scott Tashman, M.D., P.C., should be held liable for Dr. Tashman's negligence, under the theory of *respondeat superior*. Plaintiff filed her Complaint on July 24, 2014.

On February 17, 2016, the parties appeared before this Court for a hearing on Defendants' Plea in Bar. Defendants argued that Plaintiff filed her Complaint outside the prescribed two-year statute of limitations for a medical malpractice action, pursuant to Va. Code § 8.01-243(A). At

the hearing, Defendants presented evidence through expert testimony of Alessandro Ghidini, M.D., a maternal-fetal expert, and factual testimony by Dr. Tashman. Specifically, Defendants contend that the injury occurred in March 2012, and therefore this action is time-barred, as Plaintiff filed her Complaint on July 24, 2014. Plaintiff argues that Dr. Tashman's continuous treatment of Plaintiff throughout the course of her third pregnancy extended the accrual of the statute of limitations until, at least, July 26, 2012, the date of the delivery of Plaintiff's third child. The Court took the matter under advisement and requested that the parties submit supplemental briefs on the issue of whether Dr. Tashman's alleged 2009 negligent action may be considered part of the cause of action that Plaintiff seeks to recover, in light of *Nunnally v. Artis*, 254 Va. 247, 492 S.E.2d 126 (1997), and *St. George v. Pariser*, 253 Va. 329, 484 S.E.2d 888 (1997).

## II. *Relevant Facts*

Dr. Tashman began treating Plaintiff for obstetric and gynecological care in April 2004. Dr. Tashman treated Plaintiff throughout her first and second pregnancies. During these courses of treatment, Dr. Tashman determined that Plaintiff had an Rh-negative blood type. The impact of Plaintiff's negative blood type meant that her red blood cells lacked the RhD antigen that were present in individuals with a positive blood type. During Plaintiff's second pregnancy, blood tests revealed that Plaintiff had an RhD antibody titer of 1:64, indicating that Plaintiff had Rh alloimmunization, a medical condition that caused Plaintiff's immune system to develop antibodies to attack Rh-positive blood cells and those antibodies would likely destruct her fetus' Rh positive blood cells, causing fetal anemia. As a result, Plaintiff became sensitized to the Rh-positive blood type of her second child, born on May 27, 2009. Sensitization is the process where Plaintiff's blood developed an antibody, in this case antibody D, resulting from her Rh-negative blood type interacting with the Rh-positive blood type of her fetus and eventual child.

During the hearing, Defendant presented expert testimony of Dr. Ghidini, who established that sensitization itself is not an injury, but a developed condition after Plaintiff had been exposed to the Rh-positive blood type, likely occurring during delivery of her second child. Dr. Ghidini further opined, sensitization only becomes injurious during a subsequent pregnancy where a fetus also has an Rh-positive blood type and communication of the placenta is established. Before the placenta is established, no interaction occurs between Plaintiff and the fetus; thus, the fetus remained protected from maternal immunoglobulins. Once the cellular barrier in the placenta is established, the immunoglobulins can pass from fetal circulation to maternal circulation, alerting the maternal immune system to the presence of a body with an Rh-positive blood type and, therefore, incompatibility. The maternal response to the incompatibility can cause the maternal

immunoglobulin to cross this placental barrier and impact the fetal cells in the fetal circulation. Dr. Ghidini established that the injury to the fetus would have first occurred sometime in March 2012, when the fetus was sixteen to twenty weeks gestation. The initial injury would be mild to moderate degrees of anemia, and continuing in severity of the anemic effects to birth. To avoid the immunologic response, RhoGAM is administered to the mother. RhoGAM is an immunoglobulin intended to destroy fetal cells that crossed the barrier of the placenta and matriculate into the maternal circulation to prevent activation of the maternal immune system, thereby reducing fetal cell destruction and avoiding fetal anemia. RhoGAM is not one hundred percent effective, and the success of the treatment depends on individual variances in the maternal and fetal systems, including the frequency of the mixing of red cells in circulation.

Dr. Tashman testified at the hearing that, between a post-partum visit in July 2009 until Plaintiff's visit in 2011, he provided no care to Plaintiff for her Rh-negative status. During this time frame, he did provide treatment for contraceptive methods. Further, Dr. Tashman testified that, as a result of the 1:64 titer results in January 2012, he had a management plan to include: ultrasound tests, fundal height measurements, and fetal heart rate monitoring throughout the course of the pregnancy. This management plan was in addition to treating the pregnancy itself. During Plaintiff's second pregnancy, Dr. Tashman administered one dose of RhoGAM; however, he did not administer a second RhoGAM injection after Plaintiff gave birth in 2009.

On July 26, 2012, Dr. Tashman delivered Plaintiff's third child, Christian, via cesarean procedure at Inova Fair Oaks Hospital. Following the cesarean procedure, Dr. Tashman conducted an Apgar examination on Christian that yielded abnormal results. Additionally, Christian suffered severe respiratory distress and was transferred to the neonatal intensive care unit ("NICU") for seven days. NICU physicians concluded that Christian suffered respiratory insufficiency, anemia, hyperbilirubinemia, thrombocytopenia, pulmonary hypertension, tricuspid regurgitation, patent foramen ovale, and pulmonary artery branch stenosis. The NICU discharged Christian on August 2, 2012.

On July 25, 2014, Plaintiff filed this medical malpractice suit asserting that she and Christian were injured as a proximate cause of Dr. Tashman's failure administer the second RhoGAM injection in 2009 or to treat Plaintiff for the abnormal levels of antibodies during her third pregnancy.

### III. *Arguments*

#### A. *Defendants' Plea in Bar*

Defendants argue that neither *Nunnally* nor *St. George* are instructive because they did not analyze the continuing treatment rule and that Plaintiff's cause of action accrued upon her injury, in March 2012. Defendants further

argue that Plaintiff is bound by the four corners of her Complaint. "[T]he matter in controversy is that exclusively which is presented by the pleadings and the issue framed thereby. . . ." *Dulaney v. Smith*, 153 Va. 118, 126, 149 S.E. 441, 443 (1929) (citations omitted). Therefore, Plaintiff cannot argue that Dr. Tashman provided continuous or substantially uninterrupted treatment between 2009 and 2012.

Defendants assert that "[a] litigant is not allowed to 'approbate and reprobate'." *Matthews v. Matthews*, 277 Va. 522, 528, 675 S.E.2d 157, 160 (2009) (citing *Hurley v. Bennett*, 163 Va. 241, 252, 176 S.E. 171, 175 (1934)). "The prohibition against approbation and reprobation forces a litigant to elect a particular position, and confines a litigant to the position that she first adopted." *Id.* Here, Defendants argue that Plaintiff must be held to the allegations made in her Complaint and representations made at the plea in bar hearing. Namely, Plaintiff represented to the Court that she did not claim that Dr. Tashman's course of treatment between 2009 and 2012 constituted continuous and uninterrupted care. However, now, Plaintiff argues the opposite, that, "[b]ecause Plaintiff received ongoing and continuous treatment from Dr. Tashman, without interruption from any other physician, for her specific Rh negative blood condition from the time of her second pregnancy through the birth of Christian, the continuing treatment rule applies to all acts of negligence alleged in Plaintiff's Complaint."

Defendants maintain that evidence presented at the Plea in Bar hearing established that Dr. Tashman's course of care for Plaintiff between 2009 and 2012 did not constitute either continuous or substantially uninterrupted treatment. Dr. Tashman's records and testimony at the hearing supported that Plaintiff's spouse informed Dr. Tashman that they did not plan to have any more children. Furthermore, in 2011, Plaintiff sought Dr. Tashman's treatment for contraception. Thus, all parties expected that Dr. Tashman would not render additional care for Plaintiff's Rh status because this condition is only a concern during a pregnancy. Accordingly, the evidence established a cessation in treatment. See *Farley*, 219 Va. 969, 977, 252 S.E.2d 594, 599-600 ("If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat, or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality.") (quoting *Schmit v. Esser*, 183 Minn. 354, 358-59, 236 N.W. 622, 624-25 (1931)). Here, Plaintiff's subsequent, unexpected pregnancy triggered a new and separate course of treatment; therefore, the continuing treatment rule is inapplicable to cover Dr. Tashman's 2009 alleged negligence regarding Plaintiff's Rh status.

## B. *Plaintiff's Opposition*

As a threshold matter, Plaintiff asserts that Defendants made no mention of the continuing treatment rule in their Plea in Bar memorandum.

Plaintiff first argues that her cause of action accrued in March 2012, the time of her injury, not Dr. Tashman's alleged 2009 negligence. See *St. George*, 253 Va. at 332, 484 S.E.2d at 890 (the Court opined that the cause of action accrues on "the date the injury is sustained in the case of injury to the person. . . ."); see also *Nunnally*, 254 Va. at 249-50, 492 S.E.2d at 127 (the Court concluded that the plaintiff's injury occurred in 1993, four years after the doctor's negligent tubal ligation procedure, conducted in 1989). Dr. Ghidini's testimony presented at the Plea in Bar hearing supported that Plaintiff sustained injury in March 2012, when the immunoglobulin in Plaintiff's sensitized blood crossed the placenta and intermingled with the fetus' red blood cells. The degradation of the fetal red blood cells continued from March 2012 until delivery on July 26, 2012. During this period, Plaintiff remained under Dr. Tashman's continuous care, and Dr. Tashman testified that he had been aware of Plaintiff's Rh condition and monitored Plaintiff and the fetus for consequences of the sensitization condition during the course of the pregnancy. Therefore, Plaintiff argues that she sustained injury in March 2012 and the continuing treatment rule extended the date that the statute of limitations began to run at the "conclusion of the course of treatment for [her] particular disease or condition." *Chalifoux v. Radiology Assocs. of Richmond*, 281 Va. 690, 697, 708 S.E.2d 834, 837 (2011). Thus, Dr. Tashman rendered continuous and substantially uninterrupted treatment for Plaintiff's Rh condition from the date of injury in March 2012 to the delivery on July 26, 2012. Accordingly, Plaintiff timely filed her Complaint.

Plaintiff argues, alternatively, that the continuing treatment rule applied in 2009 at the time of Dr. Tashman's alleged negligence. Plaintiff asserts that the continuing treatment rule stands for the proposition that, "if there existed a physician-patient relationship where the patient was treated for the same or related ailments over a continuous and uninterrupted course, then the plaintiff [can] wait until the end of that treatment to complain of any negligence which occurred during that treatment." *Grubbs v. Rawls*, 235 Va. 607, 613, 369 S.E.2d 683, 687 (1988). The negligence need not persist throughout the course of treatment, but only must occur during the course of treatment for the same or related conditions. *Id.* Plaintiff contends that Dr. Tashman treated Plaintiff for her Rh-negative blood condition, a concern during all of her pregnancies, see Compl., ¶¶ 33(a)-(b), and, despite a lull in treatment after 2009, it remained continuous and substantially uninterrupted because Plaintiff did not seek treatment from any other physician for this condition. See *Justice v. Natvig*, 238 Va. 178, 181, 381 S.E.2d 8, 10 (1989) ("the Court declined "to limit the application of the continuing treatment rule to a specific number of years."). Thus, because Plaintiff received ongoing treatment from Dr. Tashman, without interruption from another physician the continuing treatment rule applies to all acts of negligence alleged in Plaintiff's Complaint.

## IV. *Standard of Review*

A plea in bar is a defensive pleading which "shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996) (citation omitted). A plea in bar does not address the merits of the complaint, but raises a single issue of fact that might constitute an absolute defense to the suit. *Angstadt v. Atlantic Mut. Ins. Co.*, 254 Va. 286, 292, 492 S.E.2d 118, 121 (1997). The moving party carries the burden of proof on that issue of fact. See *Campbell v. Johnson*, 203 Va. 43, 122 S.E.2d 907 (1961).

## V. *Discussion*

### A. *Dr. Tashman's Alleged Negligence in 2009, for Failure To Administer RhoGAM, Did Not Constitute an Injury until Plaintiff Subsequently became Pregnant and Her Fetus Sustained Injury in March 2012*

Virginia Code § 8.01-243(A) provides, in pertinent part, that "every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues." In every action with a prescribed statute of limitations, "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person. . . ." Va. Code § 8.01-230. It is well-established that Virginia courts construe "'injury' to mean positive, physical, or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded." *Locke v. Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981). The injury need not occur contemporaneously with the negligent act, and may arise at a later point in time. *Id.*, 221 Va. at 957-59, 275 S.E.2d at 904-05. The statute of limitations period begins to run when the injury occurs, caused by a negligent act, however slight that injury may be, even where more severe injury or damage may be subsequently sustained as a result of the negligent act. *Farley*, 219 Va. at 975, 252 S.E.2d at 598. In the case of pregnant women, injury to the fetus is injury to the mother. See *Modaber v. Kelley*, 232 Va. 60, 66-67, 348 S.E.2d 233, 236-37 (1986) (the Court held that injury to a fetus constitutes injury to the mother and that she may recover for associated physical and mental suffering). The date that the injury is sustained and, thus the date the cause of action shall accrue and the prescribed statute of limitation period begins to run, must be established by "competent evidence 'that pinpoints the precise date of injury with a reasonable degree of medical certainty'." *Lo v. Burke*, 249 Va. 311, 316, 455 S.E.2d 9, 12 (1995) (quoting *Locke*, 221 Va. at 959, 275 S.E.2d at 905).

The cases of *St. George* and *Nunnally* provide additional context of when actions accrue in medical malpractice claims. In *St. George*, the plaintiff ("St. George") alleged medical malpractice that she had been injured as a result of the defendant's ("Dr. Pariser") negligent misdiagnosis of a cancerous mole that ultimately increased her risk of subsequent injury. *St. George*, 253 Va. at 331, 484 S.E.2d at 889. On June 13, 1991, Dr. Pariser evaluated St. George for a mole on her lower leg and conducted a biopsy, performed a pathological examination and diagnosed the tissue as acanthoma, a benign condition. In March 1993, Dr. Pariser reviewed the biopsied tissue again and at that time concluded instead that it showed atypical melanocytic hyperplasia, a cancerous condition. Dr. Pariser noted this second diagnosis in a medical addendum to the medical records. As a result of the updated pathology diagnosis, a plastic surgeon performed several surgeries to remove the cancerous mole and St. George required continuous, periodic examinations. On October 21, 1993, St. George filed a motion for judgment against Dr. Pariser and Tidewater Dermapathology Service, Inc., alleging negligence and fraud. *Id.*, 253 Va. at 331-32, 484 S.E.2d at 889. The defendants filed a statute of limitations plea, contending that St. George's cause of action arose at the initial June 1991 diagnosis, which time-barred her complaint. *Id.*, 253 Va. at 332, 484 S.E.2d at 889. The trial court did not strike the defendants' plea of the statute of limitations, and the jury returned a verdict in favor of the defendants. *Id.*, 253 Va. at 332, 484 S.E.2d at 889-90.

On appeal, the Virginia Supreme Court reversed the trial court, concluding that the statute of limitations did not bar the patient's negligence claim where the actionable injury had not been the underlying cancer or alleged negligent act, but the subsequent spread and resulting injury. *Id.*, 253 Va. at 332, 484 S.E.2d at 891. The Court noted that the expert witnesses agreed that St. George had a cancerous condition in June 1991 that could have been entirely removed and eliminated any recurrence; however, by 1993, the condition altered from the original status and the melanoma moved into the dermis and now could be capable of metastasizing, increasing the chance of fatality. *Id.*, 253 Va. at 333, 484 S.E.2d at 890. The Court concluded that the actionable injury had not been the underlying cancer, but the melanoma's subsequent movement from the epidermis into the dermis. *Id.* Therefore, Dr. Pariser failed to carry his burden of proof to sustain his statute of limitations plea, because the evidence showed that St. George's date of injury arose from the spread of her cancer, not the underlying cancer itself and, thus, the plaintiffs negligence claim had not been time-barred. *Id.* 253 Va. at 335, 484 S.E.2d at 891. *St. George* proves instructive to the present matter for the rule that the statute of limitations runs from the date of the actionable injury, which need not be contemporaneous with the initial negligent act. Notably, the Court explained that the party seeking to sustain a statute of limitations plea must "show, with reasonable medical certainty,

that this injury" occurred two years before the filing of the complaint and outside of the prescribed limitations period. *Id.*

The Court acknowledges the limited instruction provided in *St. George* as it is distinguishable from the present case for two key reasons. First, the plaintiff in *St. George* suffered injury as a result of a misdiagnosis. *St. George*, 253 Va. at 334, 484 S.E. 2d at 891 ("This is a misdiagnosis case, not a malpractice action based on negligently performed surgery.") Second, the plaintiff suffered from a cancerous condition that subsequently spread and developed as opposed to an ongoing pregnancy or neonatal care issues.

In *Nunnally*, the salient facts are, on February 6, 1989, Defendant physician, Dr. Artis, performed plaintiff's ("Nunnally") tubal ligation procedure to prevent future pregnancies, which would be detrimental to her health. Nunnally subsequently became pregnant, and gave birth on November 1, 1993. On October 18, 1995, Nunnally filed her motion for judgment against Dr. Artis and Danville Memorial Hospital ("the defendants") alleging that Dr. Artis negligently performed the tubal ligation procedure. The defendants filed a plea in bar alleging that Nunnally filed her action outside of the prescribed statute of limitations. *Nunnally*, 254 Va. at 249, 492 S.E.2d at 127. The Court ultimately overruled their decision in *Scarpa v. Melzig*, holding that the plaintiffs injury did not exist at the time of the alleged negligent act. *Nunnally*, 254 Va. at 252-54, 492 S.E.2d at 128-29. *Scarpa v. Melzig* previously stood for the rule that the statute of limitations began to run at the time of the negligent act and that the "running of the statute of limitations is not postponed by the fact that substantial damages do not occur until a later date." 237 Va. 509, 512, 379 S.E.2d 307, 309 (1989). The Court explained that, in this wrongful conception action, although the wrongful act occurred as a result of the physician's negligent sterilization procedure several years earlier, no cause of action could have arisen unless the plaintiff subsequently became pregnant and that is the moment in which the plaintiff suffered an injury under the *Locke* accrual rule. *Id.*, 254 Va. at 252, 492 S.E.2d at 128 (citing *Locke*, 221 Va. at 957, 275 S.E.2d at 904). Although distinguishable in that the present matter is not a wrongful conception action, *Nunnally* is analogous in that the injury only occurred as a result of a subsequent pregnancy and that no cause of action existed until that time, regardless of whether the resulting pregnancy had been intentional or unintentional. The *Nunnally* Court explained that:

> [T]he injury of which Nunnally complains is not "trauma, pain, and inconvenience" that may have been associated with the negligent sterilization procedure. Rather, she complains of the consequences of the wrongful conception and the subsequent pregnancy which, for medical reasons, she sought to avoid. Indeed, *we fail to understand how a plaintiff could*

> *have a cause of action for wrongful conception if there has been no conception.*

*Id.* (citations omitted; emphasis added). Similar to the present facts, Plaintiff complained of consequences for alleged medical malpractice that occurred in 2009 and negatively impacted her subsequent pregnancy. However, Plaintiff would not have a cause of action unless she subsequently became pregnant, as occurred in *Nunnally.* The unrebutted expert testimony of Dr. Ghidini demonstrated that Plaintiff sustained injury within a four-week window in March 2012, between the sixteenth and twentieth weeks of pregnancy, based upon the physiology of the placental implantation. (Tr. 41-45.) Dr. Ghidini's testimony established to a reasonable degree of medical certainty that Plaintiff could not sustain injury from the alleged negligent failure to administer RhoGAM in 2009, unless and until she became pregnant and that the actionable injury, fetal compromise for maternal Rh immunization, occurred within a four-week period in March 2012. (Tr. 41-44.) Accordingly, the statute of limitations did not accrue for the 2009 failure to administer RhoGAM until March 2012, when injury to the fetus first occurred.

## B. *Dr. Tashman's Treatment of Plaintiff Throughout Her Third Pregnancy Constituted Continuing Treatment*

The continuing treatment rule provides an exception to the two-year statute of limitations to bring an action under Va. Code § 8.01-243(A). *Chalifoux*, 281 Va. at 696-97, 708 S.E.2d at 837. Under this rule, the statute of limitations begins to run at the conclusion of the course of treatment for a particular disease or condition. *Id.* Furthermore, Virginia courts previously held that:

> [W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

*Justice*, 238 Va. at 180, 381 S.E.2d at 9 (quoting *Farley*, 219 Va. at 976, 252 S.E.2d at 599).

Here, Dr. Tashman provided ongoing and continuous care throughout Plaintiff's third pregnancy, beginning in 2011 until, at least, Christian's birth on July 26, 2012. In December 2011, Dr. Tashman began providing obstetrical prenatal care during Plaintiff's third pregnancy. (Tr. 119-120.) In January 2012, Plaintiff's blood examination revealed an abnormal

presence of antibodies, indicating that the blood had sensitized. (Tr. 123.) Dr. Tashman further testified that, during the pregnancy, he treated Plaintiff for conditions unrelated to her Rh-negative status in addition to developing a "management plan" to monitor the Rh alloimmunization. (Tr. 128-29.) Specifically, as a result of Plaintiff's sensitization, Dr. Tashman ordered ultrasounds, recorded the size and measurement of the fundal height, and monitored fetal heart rates. (Tr. 128.) Notably, Dr. Tashman testified that he implemented this treatment plan as a direct consequence to Plaintiff's sensitization for the duration of her pregnancy. (Tr. 128-29.) Therefore, Dr. Tashman's testimony established that he provided continuous, uninterrupted treatment for Rh alloimmunization from the date of injury in March 2012 through, at the earliest, the date of Christian's delivery; thus, tolling the date of accrual until, at least, July 26, 2012. Accordingly, Plaintiff timely filed the action within the prescribed two-year statute of limitations. See Va. Code § 8.01-243(A).

### C. *Dr. Tashman Did Not Provide Continuous or Substantially Uninterrupted Care for Plaintiff's Blood Sensitization-Related Issues from 2009 through the Delivery of Plaintiff's Third Child in 2012*

The continuing treatment rule is limited to contexts of a single, continuous, and uninterrupted course of treatment. *Grubbs v. Rawls,* 235 Va. at 612, 369 S.E.2d at 686; *Farley,* 219 Va. at 976, 980, 252 S.E.2d at 599, 601. "If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat, or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality." *Farley,* 219 Va. at 977, 252 S.E.2d at 600 (citations omitted).

In this case, the evidence established a cessation in treatment after the 2009 delivery of Plaintiff's second child. At the February 17, 2016, hearing, Plaintiff's counsel specifically stated that, "[w]e're not contending that [Plaintiff] was under [Dr. Tashman's] continuing treatment for Rh sensitization from 2009 until 2012. We've nowhere contended that. . . . The continuing treatment in this case is from the date of injury." (Tr. 117-18.) When asked by the Court whether Plaintiff contends that Dr. Tashman provided uninterrupted treatment from 2009 through her third pregnancy, Plaintiff's counsel responded, "[n]o, never have." (Tr. 100.) Additionally, Dr. Tashman testified that he did not provide any care related to Plaintiff's Rh negative status between July 2009 and December 2011. (Tr. 113.) Dr. Tashman testified that he did provide care for Plaintiff related to contraception between July 2009 and December 2011. (Tr. 113-14.) Accordingly, Dr Tashman did not provide continuous, substantially uninterrupted care for Plaintiff between July 2009 and December 2011 for blood sensitization-related issues.

*VI. Conclusion*

For the foregoing reasons, the Court finds to a reasonable degree of medical certainty that Plaintiff sustained her actionable injury for fetal compromise for maternal Rh immunization in March 2012, and, further, that Dr. Tashman provided continuous, uninterrupted treatment for Plaintiff from the date of injury throughout the duration of her third pregnancy until, at least, July 26, 2012. Accordingly, Defendants' Plea in Bar is denied.